# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

JANE DOE,

PLAINTIFF,

v.

SUPREME COURT OF KENTUCKY, ET AL.,

DEFENDANTS

CIVIL ACTION NO. 3:19-CV-236-GNS

*Electronically Filed*

## THE KBA DEFENDANTS' MOTION TO DISMISS
## AND MEMORANDUM IN SUPPORT

Katie M. Glass
Robin E. McGuffin
STITES & HARBISON, PLLC
250 West Main Street, Suite 2300
Lexington, Kentucky  40507-1758
Telephone:  (859) 226-2300

Mark R. Overstreet
STITES & HARBISON, PLLC
421 W. Main St.
P.O. Box 634
Frankfort, KY  40602-0634
Telephone:  (502) 223-3477

Bethany A. Breetz
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky  40202-3352
Telephone:  (502) 587-3400

*Counsel for Defendants Kentucky Bar Association, Board of Governors of the Kentucky Bar Association, Kentucky Lawyer Assistance Program Foundation, Inc., and Pamela Yvonne Hourigan in her Official and Individual Capacities*

# TABLE OF CONTENTS

Introduction ....................................................................................................................... 1

Factual Background ........................................................................................................... 2

    I.     The Regulation of the Practice of Law in Kentucky ............................................ 2

        A.     The Supreme Court of Kentucky ............................................................ 2

        B.     The Kentucky Bar Association ("the KBA") ........................................... 2

        C.     The Board of Governors of the Kentucky Bar Association .................... 3

        D.     The Kentucky Lawyer Assistance Program ("the KYLAP Program") ................. 4

        E.     The Kentucky Lawyer Assistance Program Foundation, Inc. ("the KYLAP Foundation") .............................................................................. 5

        F.     Ms. Hourigan ......................................................................................... 6

        G.     The Office of Bar Admissions ............................................................... 6

        H.     Kentucky Board of Bar Examiners ......................................................... 7

        I.     The Committee on Character and Fitness ............................................... 7

    II.     Plaintiff's Claims Against The KBA Defendants ........................................... 8

        A.     Factual background as alleged in the complaint .................................... 9

        B.     Factual allegations involving the KBA Defendants ............................... 9

        C.     Causes of action alleged in the complaint ........................................... 11

Argument ......................................................................................................................... 13

    I.     The KBA Defendants Are Immune From Suit ................................................ 13

        A.     Ms. Hourigan in her individual capacity is immune from suit. ........................... 13

            1.     Federal and state absolute quasi-judicial immunities bar all of Doe's claims against Ms. Hourigan in her individual capacity. ........................................... 13

            2.     In addition, qualified immunity bars the claims brought against Hourigan in her individual capacity. ........................................................................ 15

        B.     This Court lacks subject matter jurisdiction over the remainder of Doe's claims against the KBA Defendants due to the Eleventh Amendment. ........................................... 18

            1.     The KBA, the KBA Board of Governors, the KYLAP Foundation, and Ms. Hourigan in her official capacity are state entities eligible for Eleventh Amendment immunity. ........................................................................ 19

            2.     The Eleventh Amendment bars Doe's ADA Title II claim (Count I)............. 20

            3.     The Eleventh Amendment bars Doe's Rehabilitation Act claims (Count II). 27

            4.     The Eleventh Amendment bars Doe's constitutional claims even if she had brought her action pursuant to 42 U.S.C. § 1983 (Counts III-V). .................. 28

            5.     The Eleventh Amendment bars Doe's state law claims (Counts VI-X). ........ 29

C.      Doe's state-law claims are barred by SCR 2.009 and Kentucky's judicial
statements privilege. ........................................................................... 30

II.     Doe's Complaint Fails to State a Claim Upon Which Relief Can Be Granted........... 32

A.      Standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) ................................ 32

B.      Doe's complaint ignores the distinctions between the various defendants........... 33

1.      Doe's complaint alleges no wrongdoing by the KBA Board of Governors and
the KYLAP Foundation. ................................................................................ 33

2.      The KBA Defendants play no role in the admission of attorneys to practice
law......................................................................................................... 35

C.      Count I should be dismissed as to each of the KBA Defendants......................... 38

1.      Count I is time-barred. ....................................................................... 38

2.      Count I must be dismissed as to Ms. Hourigan in her individual capacity..... 39

D.      Count II should be dismissed as to each of the KBA Defendants. ...................... 39

1.      The Rehabilitation Act is not applicable to the KBA Defendants. ................ 39

2.      Count II should be dismissed as against Ms. Hourigan in her individual
capacity. ............................................................................................. 41

E.      Counts III-V should be dismissed as to each of the KBA Defendants. ............... 41

F.      Count VI should be dismissed as to each of the KBA Defendants...................... 41

G.      Count VII should be dismissed as to each of the KBA Defendants. ................... 42

H.      Count VIII should be dismissed as to each of the KBA Defendants. .................. 44

I.      Count IX should be dismissed as to each of the KBA Defendants...................... 45

J.      Count X should be dismissed as to each of the KBA Defendants. ...................... 46

Conclusion .................................................................................................... 46

## INTRODUCTION

The Kentucky Bar Association, the Board of Governors of the Kentucky Bar Association, the Kentucky Lawyer Assistance Program Foundation, Inc., and Pamela Yvonne Hourigan in her official and individual capacities (collectively referred to as "the KBA Defendants") move to dismiss the plaintiff's complaint against them in its entirety.

Filed pseudonymously without leave, the complaint concerns the application of a woman ("Jane Doe") diagnosed with bipolar disorder to practice law in Kentucky. The complaint alleges that the defendants violated a variety of constitutional, statutory, and common law duties when they allegedly imposed certain conditions upon Doe's admission to the bar that purportedly discriminated against her on the basis of her disability. Multiple independent grounds require the dismissal of Doe's claims against the KBA Defendants.

The KBA Defendants are an arm of the Supreme Court of Kentucky and one of its employees; accordingly, a variety of immunity doctrines preclude Doe's claims against them. Both quasi-judicial absolute immunity and qualified immunity under federal and state law preclude suit against Ms. Hourigan in her individual capacity. With respect to the claims against the remaining KBA Defendants and Ms. Hourigan in her official capacity, the Eleventh Amendment of the U.S. Constitution precludes Doe from suing them in federal court. Doe's state-law claims are also barred by SCR 2.009 and Kentucky's judicial statements privilege.

Moreover, even if immunity doctrines do not dispose of this case—which they do—all of Doe's causes of action fail to state claims upon which relief can be granted. Accordingly, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Doe's complaint should be dismissed against the KBA Defendants in its entirety.

1

## FACTUAL BACKGROUND

The facts below are found in the complaint (DN 1) and the rules of the Supreme Court of Kentucky.  The Court may rely upon matters of public record such as the rules without converting this to a summary judgment motion.  *See Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

I.     **THE REGULATION OF THE PRACTICE OF LAW IN KENTUCKY**

A.     **The Supreme Court of Kentucky**

The regulation of the practice of law in Kentucky, including the promulgation and enforcement of rules governing the admission to the practice of law and the conduct of licensed attorneys, is vested ultimately in the Supreme Court of Kentucky.  Ky. Const. § 116 ("The Supreme Court shall, by rule, govern admission to the bar and the discipline of members of the bar").  Although the Supreme Court has delegated certain preliminary quasi-judicial functions to judicial branch agencies (such as the Kentucky Bar Association, the Kentucky Board of Bar Examiners, and the Committee on Character and Fitness), it retains final authority over all aspects of the practice of law in Kentucky.  *See e.g.*, *In re Paniagua de Aponte*, 364 S.W.3d 176, (Ky. 2012) (reviewing decision of the Board of Bar Examiners that applicant lacked qualifications to sit for bar exam); *Kentucky Bar Ass'n v. Jones*, 759 S.W.2d 61, 64 (Ky. 1988) ("Final decisions of guilt and punishment can only be made by the Supreme Court, and it is done on the basis of a de novo consideration of pleadings and trial review.") (emphasis omitted).

The Supreme Court of Kentucky is a named defendant.  (Compl. ¶ 5).

B.     **The Kentucky Bar Association ("the KBA")**

The KBA is an arm of the Supreme Court of Kentucky.  *Mischler v. Lambert*, No. 3:08-cv-231-M, 2008 U.S. Dist. LEXIS 71559, *3 (W.D. Ky. Sept. 19, 2008).  Its duties are limited to its involvement in the Supreme Court's attorney disciplinary process, the re-admission of

2

disciplined attorneys, and the provision of certain services to its members and the public.  *See*, *e.g.*, Rules of the Supreme Court of Kentucky ("SCR") 3.025 (mission of KBA); SCR 3.600 *et seq*. (continuing legal education); SCR 3.800 (legal negligence arbitration); SCR 3.810 (legal fee arbitration); SCR 3.820 (client security fund).  All actions of the KBA are subject to review, revision, and rescission by the Supreme Court of Kentucky.  *See* Bylaws of the Kentucky Bar Association, *available at* https://c.ymcdn.com/sites/www.kybar.org/resource/resmgr/By-laws/KBA_bylaws.pdf.

The KBA has no direct responsibility for the admission of persons to the practice of law in Kentucky, the assessment of the character and fitness of applicants for admission to the bar, or, outside the attorney disciplinary process, the character or fitness of admitted attorneys.  *See e.g.*, SCR 2.000 (Office of Bar Admissions); SCR 2.020 (Board of Bar Examiners); SCR 2.040 (Committee on Character and Fitness).  All persons admitted to practice law in Kentucky must be members of the KBA.  SCR 3.030(1).

The KBA is a named defendant.  (Compl. ¶ 6).

### C.     The Board of Governors of the Kentucky Bar Association

The Board of Governors of the KBA is the "governing body" of the KBA.  SCR 3.070.  Although it has broad powers with respect to the operations of the KBA, its authority is no broader than that of the KBA.  *See* SCR 3.090.

The Board of Governors is by Supreme Court Rule "the agent of the [Supreme] Court for the purpose of administering and enforcing the Rules [of Professional Conduct]."  SCR 3.070.  It too is an arm of the Supreme Court.  *Deters v. Ky. Bar Ass'n*, 646 F. App'x 468, 470 n.1 (6th Cir. 2016).  The Board of Governors has no responsibility for the admission of persons to the practice of law in Kentucky, the assessment of the character and fitness of applicants for

3

admission to the bar, or, outside the attorney disciplinary process, the character or fitness of admitted attorneys.

The Board of Governors is a named a defendant in the complaint.  (Compl. ¶ 6)  The complaint lacks specific factual allegations concerning actions allegedly taken or omitted by the Board of Governors.

### D.    The Kentucky Lawyer Assistance Program ("the KYLAP Program")

The KYLAP Program is a state-wide program established by the Supreme Court of Kentucky and designed "to address impairment issues of the Kentucky legal community."  SCR 3.910(1).  The KYLAP Program is governed by the KYLAP Commission—*not* the KYLAP Foundation.  SCR 3.920(1); SCR 3.920(6).  KYLAP Commission members are appointed by the Board of Governors.  *Id*.

Although it is housed in the KBA for administrative purposes and is administered by a Program Director and staff appointed by the Executive Director of the KBA, *see* SCR 3.910(1), SCR 3.930, the KYLAP Program operates wholly autonomously of the KBA, the Board of Governors, and other Supreme Court agencies.

Members of the Kentucky legal community may self-refer to the KYLAP Program, or may be referred by third parties, the Supreme Court of Kentucky, or one of the Supreme Court's agencies (such as the Committee on Character and Fitness).  SCR 3.960; SCR 3.970; SCR 3.980.  However, the KYLAP Program "is not obligated . . . to accept any request for assistance" by an agency of the Supreme Court, or to become involved in any proceeding before such agency.  SCR 3.970(4).  Further, the KYLAP Program is limited to assisting a Supreme Court agency only when "it determines that it is able to provide assistance" in conformity with the rules governing its operation.  *Id*.  The rules governing its operations do not create a duty to any

4

person or entity other than the Supreme Court, nor do they give rise to any private cause of action or claim.  SCR 3.995.

The KYLAP Program and its staff are subject to strict rules of confidentiality that effectively segregate the KYLAP Program, and its staff and actions taken, from the KBA, the Board of Governors, and other agencies of the Supreme Court:

> All communications to KYLAP and all information gathered, records maintained and actions taken by KYLAP shall be confidential, shall be kept in strict confidence by KYLAP's staff and volunteers, shall not be disclosed to any person or entity, *including any agency of the Court and any department of the* . . . [KBA] . . . .

SCR 3.990(1) (emphasis added).  The only exception is where the person subject to the KYLAP Program's assistance has consented in writing to the disclosure.  *Id*.  The KYLAP Program's employees have a separate email domain (kylap.org) from KBA employees.  (Compl. Caption).

The KYLAP Program is not named as a defendant in the caption of the complaint.  It is referred to in the complaint in the alternative with the KYLAP Foundation.  (Compl. ¶ 18).  No "Notice of Lawsuit And Request To Waive Service of Summons" was delivered to the KYLAP Program, nor was the KYLAP Program served with a summons.

**E.     The Kentucky Lawyer Assistance Program Foundation, Inc. ("the KYLAP Foundation")**

The KYLAP Foundation is a non-profit tax exempt foundation established pursuant to SCR 3.910(8) to provide financial support to the KYLAP Program in "carrying out its mission" and to provide loans "to enable members of the legal community to obtain treatment for their impairment."  It is governed by a separate board of directors appointed by the Board of Governors.  SCR 3.910(8).

The KYLAP Foundation is a separate and distinct entity from the KBA and the Board of Governors.  The KYLAP Foundation does not administer the KYLAP program.  *See* SCR

3.920(6) (the KYLAP Commission is charged with "general responsibility for the administration of KYLAP in accordance with" the rules of the Supreme Court).

The KYLAP Foundation is a named defendant.  (Compl. ¶ 18).

### F.      Ms. Hourigan

Ms. Hourigan is the Program Director of the KYLAP Program.[1]  Because of the confidentiality provisions of SCR 3.990, and absent a written release by Doe, Ms. Hourigan is prohibited from disclosing to this Court—and even her counsel—her communications (if any) concerning or involving Doe, the records of the KYLAP Program (if any) concerning Doe, and the actions (if any) taken or recommended by the KYLAP Program with respect to Doe.  These same prohibitions prevent Ms. Hourigan from providing such information to the KBA, the Board of Governors, or any other defendant in this action.

Ms. Hourigan is named as a defendant in both her official and individual capacity. (Compl. ¶ 19).

### G.      The Office of Bar Admissions

The Office of Bar Admissions, like the KBA, is an arm of the Supreme Court.  *See* SCR 2.000; *Hubbard v. Ky. Bar Ass'n*, 66 S.W3d 684, 696 (Ky. 2001) (holding that constituent parts of the Office of Bar Admissions are arms of Supreme Court).

The Office of Bar Admissions is not part of the KBA and operates independently of the KBA, including maintaining its offices in a separate city (Lexington) from the offices of the KBA (Frankfort).  *See generally* https://www.kyoba.org/.  The domain for the employee email addresses for the Office of Bar Admissions (kyoba.com) is distinct from that of the KBA. (Compl. Caption).  The Office of Bar Admissions and its two constituent parts (the Kentucky

---

[1] Ms. Hourigan's employer is the KBA.  As explained above, the KYLAP Program is housed within the KBA for administrative purposes, despite the fact that it operates autonomously of the KBA.

Board of Bar Examiners and the Committee on Character and Fitness) are funded and budgeted separately from the KBA.  SCR 2.002(1); SCR 2.002(2).

The Office of Bar Admissions is a named defendant.  (Compl. ¶ 13).

### H.      Kentucky Board of Bar Examiners

The Kentucky Board of Bar Examiners is one of the two separate entities constituting the Office of Bar Admissions.  SCR 2.000.  It consists of seven attorneys appointed by the Supreme Court, SCR 2.020(2), and is an arm of the Supreme Court, *Hubbard*, 66 S.W3d at 696.  The Board of Bar Examiners is "charged with the responsibility of administering the bar examination to qualified applicants for admission to the bar of the Commonwealth."  SCR 2.020(3).

Like the Office of Bar Admissions, the Board of Bar Examiners is separate and distinct from, and is not a part of, the KBA.  *See* SCR 2.000.  The Board of Bar Examiners has its own funding, budget, and employees, *see* SCR 2.002(1), SCR 2.002(2), SCR 2.007, and maintains its own offices in a separate city (Lexington) from the offices of the KBA (Frankfort).

The Board of Bar Examiners is a named defendant.  (Compl. ¶ 7).

### I.      The Committee on Character and Fitness

The Committee on Character and Fitness is the second of two separate entities constituting the Office of Bar Admissions.  SCR 2.000.  It consists of five attorneys appointed by the Supreme Court, SCR 2.040(1), and is an arm of the Supreme Court, *Hubbard*, 66 S.W3d at 696.  The Committee on Character and Fitness's responsibilities include "determining the age, character and fitness, education and general qualification of . . . applicants for admission to the bar of the Commonwealth."  SCR 2.040(3).  Its recommendations are reviewed by the Supreme Court, *see* SCR 2.050, SCR 2.060, which retains final authority over admission to practice law in the Commonwealth.  *See* Ky. Const. § 116; *Strasser v. Character & Fitness Comm. Of The Office of Bar Admissions*, 160 S.W.3d 789 (Ky. 2005).

The Committee on Character and Fitness also is separate and distinct from, and is not a part of, the KBA.  The Committee on Character and Fitness has its own funding, budget, and employees, *see* SCR 2.002(1), SCR 2.002(2), SCR 2.007, and maintains its own offices in a separate city (Lexington) from the offices of the KBA (Frankfort).

The Committee on Character and Fitness is a named defendant.  (Compl. ¶ 8).

## II.  PLAINTIFF'S CLAIMS AGAINST THE KBA DEFENDANTS

The 71-page, 345-paragraph complaint identifies at least sixteen persons and entities against whom Doe may assert claims (the KYLAP Program, for example, is referred to in the body of the complaint but not the caption).  The complaint alleges ten claims against the KBA Defendants (Counts III-V are combined under one subheading).  Two of the claims are founded on federal statutes; one is based on the Kentucky Civil Rights Act ("KCRA"); three counts assert violations of the U.S. Constitution but do not purport to bring claims pursuant to 42 U.S.C. § 1983; and the remaining four counts purport to assert claims under Kentucky common law.

The complaint repeatedly and erroneously conflates the KBA (and the rest of the KBA Defendants) with other distinct and independent arms of the Supreme Court such as the Office of Bar Admissions, the Board of Bar Examiners, and the Committee on Character and Fitness.  The complaint also evinces a failure to undertake even the most rudimentary investigation into the relationship between the defendants under settled Kentucky law.  For example, Ms. Feamster is alleged to be the general counsel of the KBA despite the fact that the KBA does not have a general counsel, the fact that the KBA's staff directory does not list her as a staff member, *see* https://www.kybar.org/page/contactus, and the fact that the directory of the Office of Bar Admissions lists Ms. Feamster as its general counsel and director.  *See* https://www.kyoba.org/Views/public/Content.aspx?page_id=37.

## A.     Factual background as alleged in the complaint

Doe was admitted to practice law in Florida in 2006.  (Compl. ¶ 4).  In 2014, she was "diagnosed with Bipolar I disorder after experiencing mania while taking a prescribed antidepressant medication."  (*Id.* at ¶¶ 40-41).  The Florida bar became "concerned with social media posts by Plaintiff" and placed Doe in a diversion program beginning no later than 2015.  (*Id*. at ¶¶ 45, 47).  Her participation in the diversion program was monitored by the "Florida Lawyers' [*sic*] Assistance Program."  (*Id*. at ¶ 45).  She remained in the program until approximately June 1, 2018.  (*Id*. at ¶ 49).

Doe applied for admission to Kentucky in August 2015, and was permitted to sit for the Kentucky Bar Examination at its next administration in February 2016.[2]  She was conditionally admitted and sworn in by the Supreme Court on April 28, 2016.  (*Id*. ¶ 82).  Doe was unconditionally admitted by the Supreme Court on August 28, 2018.  (*Id*. at ¶ 38).  Doe was in the Florida diversion program and subject to monitoring by the Florida Lawyers Assistance Program from the time she was admitted conditionally in Kentucky until approximately two months prior to her unconditional admission by the Supreme Court of Kentucky.  (*Id*. ¶¶ at 38, 82).  Beginning April 28, 2016, and during the entire period Doe was conditionally admitted in Kentucky after sitting for the bar exam, Doe "continually appeared on the KBA's website as an attorney with full practice capability, listed in good standing."  (*Id*. at ¶ 135).

## B.     Factual allegations involving the KBA Defendants.

Doe entered into a consent agreement with the Committee on Character and Fitness (not the KBA, the KYLAP Program, or the KYLAP Foundation) on March 29, 2016.  (*Id.* at ¶ 101).  Among the conditions of her admission were that she enter into a separate KYLAP supervision

---

[2] Doe was required to take the bar exam because Florida does not afford reciprocity to other states.  (*Id*. at ¶ 50).

agreement.  (*Id*. at ¶ 67).  That agreement, in turn, required that Doe abstain from alcohol and non-prescription drug use, and that she submit to random drug and alcohol testing.  (*Id*. at ¶ 84).  Doe objected to the abstinence and testing provisions; after further communications between Doe, her attorney, her physician, and Ms. Hourigan, the KYLAP agreement was amended three months later on July 29, 2016 to remove the abstinence and testing provisions.  (*Id*. at ¶ 107).

Doe alleges that the amended KYLAP agreement required that she notify Ms. Hourigan if Doe left "town for business or pleasure for one week or more."  (*Id*.).  Doe also alleges that Ms. Hourigan notified the Office of Bar Admissions on June 6, 2016 that Doe had not executed the KYLAP agreement, (*id*. at ¶ 100); but, Doe does not allege that the notification was in error (*i.e.*, Doe does not allege that she had, in fact, executed the KYLAP agreement by that date).  Finally, the complaint alleges that Ms. Hourigan agreed to meet with Doe on April 28, 2016 at the Kentucky Capitol at the time of Doe's swearing in ceremony.  (*Id*. at ¶ 82).  Doe then alleges that Ms. Hourigan discussed Doe's KYLAP agreement with Doe on the Capitol steps and that the discussion was overheard by a member of the public.  (*Id*. at ¶ 87).

The complaint's remaining factual allegations relate[3] to the Office of Bar Admissions, its Committee on Character and Fitness and Board of Bar Examiners, and their employees and members, including Ms. Feamster, Ms. Lawson, Ms. Thomas, and Mr. Sloan.  (*See generally id*. at ¶¶ 101-153).  The complaint repeatedly conflates those entities with the KBA, its Board of Governors, and the KYLAP Foundation.  These remaining allegations relate to April 27, 2017 and July 6, 2018 proceedings before the Committee on Character and Fitness.

---

[3] Paragraphs 131 and 136 allege or refer to alleged communications between Doe and staff members of the KBA's continuing legal education department.  Doe does not assert any claims with respect to those communications.

None of the factual allegations in the complaint identify actions taken (or not taken) by the Board of Governors or the KYLAP Foundation.

### C.    Causes of action alleged in the complaint

Doe filed this complaint on April 1, 2019.  The complaint was filed:

(i)    35 months after Ms. Hourigan discussed Doe's KYLAP agreement with Doe at the Kentucky Capitol.  (*Id.* at ¶¶ 82; 87);

(ii)    34 months after Doe "contacted the [United States] Department of Justice to make a complaint under the ADA" in May 2016.  (*Id.* at ¶ 104).  The complaint to the Department of Justice in part centered on the requirements of KYLAP agreement.  (*Id.*);

(iii)    33 months after she retained counsel "to represent her in regard to Kentucky bar admissions."  (*Id.* at 99);

(iv)    33 months after Ms. Hourigan allegedly notified the Office of Bar Admissions that Doe had not executed the KYLAP agreement and was not under supervision of KYLAP.  (*Id.* at ¶ 100).  Doe characterizes the excerpt as "requesting a show cause order" but nothing in the alleged notification as copied in her complaint makes such a request or even refers to a show cause order.  (*Id.*); and

(v)    32 months after the KYLAP agreement was revised to delete the abstinence provisions to which Doe objected.  (*Id.* at ¶ 107).

Count I of the complaint alleges that the KBA Defendants violated Title II of the Americans With Disabilities Act ("ADA") by "diverting" Doe's application for admission after learning of her disability, (*id.* at ¶ 184); by requiring Doe to disclose medical records, (*id.* at ¶ 189); by refusing to amend the KYLAP agreement as requested by Doe, (*id.* at ¶ 192); by retaliating against Doe in some unspecified manner, (*id.* at ¶ 193); by "failing to afford considerable weight to Plaintiff's treating physician's statements," (*id.* at ¶ 194); by requiring Doe to appear at formal and informal hearings of the Committee on Character and Fitness, (*id.* at ¶ 196); by including certain requirements in the KYLAP agreement, (*id.* at ¶¶ 197, 202); and by failing to protect Doe's confidential records, (*id.* at ¶¶ 179, 197, 198, 204, 205).

Count II of the complaint arises under § 504 of the Rehabilitation Act.  It alleges that the KBA Defendants failed to provide membership in the Kentucky Bar to Doe "in a more integrated setting" with "reasonable modifications."  (*Id*. at ¶ 238).  The complaint does not (and cannot) allege that the KBA Defendants receive federal funds.

Counts III-V of the complaint (described together under one subheading) alleges that the KBA Defendants violated Doe's rights to equal protection, due process, and "access to the courts" under the U.S. Constitution by allegedly discriminating against her because of her disability and by allegedly delaying her unconditional admission to the Kentucky bar.  (*Id*. at ¶¶ 256-258; 261-263).

Count VI alleges that the KBA Defendants are "labor organizations" as that term is used in the KCRA, and that they violated the KCRA by discriminating against Doe because of her alleged disability.  (*Id*. at ¶¶ 268-269; 271).

Counts VII through X allege state common law claims of malicious prosecution, defamation, improper interference with contractual relations, and intentional infliction of emotional distress against the defendants.  The allegations against the KBA Defendants primarily concern Ms. Hourigan's alleged actions, including allegedly notifying the Committee on Character and Fitness that Doe had not executed the KYLAP agreement, (*id*. at ¶ 100); misrepresenting communications with Doe's physician, (*id*. at ¶¶ 305, 320); attacking Doe's character and stating Doe suffered from alcohol dependency, (*id*. at ¶¶ 313, 318, 320); "implying to the KBA and its regulating officials that Plaintiff lacked character and fitness to practice law," (*id*. at ¶ 326); allegedly interfering with Doe's conditional admission agreement, (*id*. at ¶¶ 293, 294, 315); and initiating and prosecuting efforts to suspend and to revoke Doe's license to practice law, (*id*. at ¶¶ 276, 325, 327, 331).

## ARGUMENT

**I.    THE KBA DEFENDANTS ARE IMMUNE FROM SUIT**

Multiple immunity doctrines bar Doe's claims against each of the KBA Defendants, thereby requiring that her complaint be dismissed in its entirety.

### A.    Ms. Hourigan in her individual capacity is immune from suit.

1.    Federal and state absolute quasi-judicial immunities bar all of Doe's claims against Ms. Hourigan in her individual capacity.

All of Doe's claims against Ms. Hourigan in her individual capacity are barred by absolute quasi-judicial immunities as recognized by both federal and Kentucky law. *See, e.g.*, *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003) (quasi-judicial immunity is a personal immunity available when public officials are sued in their individual capacities); *Belcher v. Kentucky Parole Bd.*, 917 S.W.2d 584, 589 (Ky. App. 1996) (absolute immunity extends to state officials who "perform functionally comparable tasks to those of judges").

With respect to Doe's federal claims, it is well-established in the Sixth Circuit that "in conducting the character and fitness examination which is integral to the process of determining whether an applicant is fit to practice law," individuals acting under the authority of a state's supreme court are "performing a judicial or quasi-judicial function for which they are entitled to absolute immunity" from damages claims. *Lawrence v. Welch*, 531 F.3d 364, 372-73 (6th Cir. 2008) (collecting cases). This is because "determining a particular individual's qualifications and fitness for admission to practice law is an inherently judicial act." *Id.* at 373. Further, this immunity applies not only to judges, but also to non-judges who act "in obedience to duties imposed upon them by the Kentucky Supreme Court." *Sparks v. Character & Fitness Comm.*, 859 F.2d 428, 431 (6th Cir. 1988) (members of Kentucky Committee on Character and Fitness were protected by absolute immunity).

13

Likewise, with respect to Doe's state-law claims, case law indicates that Kentucky courts would adopt the reasoning of federal courts such as *Lawrence* and *Sparks*.  Kentucky courts have looked to their federal counterparts in defining absolute quasi-judicial immunity as a protection for "state officials engaged in adjudicative functions."  *Roach v. Ky. Parole Bd.*, 553 S.W.3d 791, 794 (Ky. 2018) (quoting *Draine v. Leavy*, 504 F. App'x 494, 495 (6th Cir. 2012)). Kentucky courts have further explained that, consistent with federal law, Kentucky's absolute quasi-judicial immunity applies to "the action, discretion, etc. of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and exercise discretion of a judicial nature."  *Id.* (citation and internal quotation marks omitted).

Here, Doe's claims focus on how Ms. Hourigan evaluated the conditions to be included in Doe's KYLAP agreement in light of Doe's particular fitness to practice law.  Just like the assessments made by state bars' character and fitness committees considered by the *Sparks* and *Lawrence* courts, Ms. Hourigan's alleged assessments of what conditions needed to be included in Doe's KYLAP agreement in order to "obey" the duties imposed by the Supreme Court of Kentucky in connection with the KYLAP Program were "inherently judicial acts."  Similarly, in deciding whether and what conditions to include in the KYLAP agreement in connection with Doe's conditional admission to practice law in Kentucky, Ms. Hourigan was required to "investigate facts, or ascertain the existence of facts, . . . weigh evidence, and draw conclusions from them, as a basis for [her] official action."  *See Roach*, 553 S.W.3d at 794.  Accordingly, under both federal and state law, Ms. Hourigan is absolutely immune from Doe's federal claims.[4]

---

[4] To the extent that any of Doe's state law claims are premised on an alleged violation of the Supreme Court rules governing KYLAP, such claims are barred by SCR 3.995.

14

2.      In addition, qualified immunity bars the claims brought against Hourigan
        in her individual capacity.

a.      *The federal qualified immunity doctrine bars Counts III-V against
        Ms. Hourigan in her individual capacity.*

Doe's constitutional claims in Counts III-V against Ms. Hourigan in her individual

capacity are also barred by qualified immunity.[5]  To defeat Ms. Hourigan's claim to federal

qualified immunity, Doe must show that Ms. Hourigan's alleged actions constituted violations of

"clearly established" constitutional law.  *See, e.g.*, *Meadows v. Enyeart*, 627 F. App'x 496, 500

(6th Cir. 2015) ("After a defendant raises a qualified-immunity defense, the burden shifts to the

plaintiff to demonstrate that the government official violated a right that was . . . clearly

established . . . .").  Because Ms. Hourigan's alleged actions, if true, do not violate any

constitutional right—let alone a "clearly established" one—Ms. Hourigan is entitled to qualified

immunity with respect to Doe's constitutional claims.

First, for the reasons explained in Section I(B)(2)(a), Doe fails to allege plausible

violations of the U.S. Constitution.  Her due process, equal protection, and access to the courts

claims are founded upon her belief that she has a right to unconditional admission to practice law

in the Commonwealth.  As stated in Section I(B)(2)(a), the law is to the contrary.

Second, even if Doe arguably alleged plausible violations, the alleged violations are not

"clearly established" as a matter of law.  For a plaintiff to defeat a qualified immunity defense,

the right at issue must have been "clearly established" at the time of the violation "in light of the

---

[5] As explained below in Sections II(C) and II(D), other grounds require dismissal of Count I and II
against Ms. Hourigan.  Because Ms. Hourigan's arguments in this motion do not focus on whether Doe
alleged cognizable substantive violations of Title II of the ADA and the Rehabilitation Act, Counts I and
II are omitted from this qualified immunity discussion.  However, Ms. Hourigan still asserts the qualified
immunity defense to those claims; if this Court rejects Ms. Hourigan's arguments in Sections II(C) and
II(D) and permits Counts I and II to proceed against her in her individual capacity, Ms. Hourigan will
brief her entitlement to qualified immunity on Counts I and II at the appropriate stage of the litigation.

specific context of the case." *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 543 (2011).  "In inquiring whether a constitutional right is clearly established, [the Court] must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits." *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999)).

The KBA Defendants cannot locate any precedent—and Doe cites none—that could have put anyone on notice that the specific conditions placed on Doe's admission to practice law in Kentucky would violate any person's constitutional rights.  Consequently, Doe fails to pass the hurdle of the second prong of the qualified immunity test.  Ms. Hourigan is therefore entitled to qualified immunity on Counts III-V in her individual capacity.

> b.  *Kentucky's qualified official immunity doctrine bars the state-law claims against Ms. Hourigan in her individual capacity.*

Doe's state law-claims against the KBA Defendants are also barred by their qualified official immunity.  Under Kentucky law, qualified official immunity shields public employees or other agents of the state from liability for discretionary acts performed in good faith and within the scope of their authority to act on behalf of the state entity.  *See Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 717 (Ky. 2007).  A discretionary act is one "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).  A ministerial acts is one that "requires only obedience to the orders of others." *Id.*

Doe alleges discretionary conduct on the part of Ms. Hourigan.  Far from "obedience to the orders of others," the gravamen of Doe's complaint against Ms. Hourigan is that Ms. Hourigan failed to evaluate the conditions to be incorporated in the KYLAP agreement.  (Compl.

16

¶¶ 84-107).  These allegations fundamentally concern alleged discretionary actions by Ms. Hourigan that are eligible for qualified official immunity.

Further, Doe's complaint fails to plausibly allege bad faith on the part of Ms. Hourigan. "[B]ad faith can be predicated on a violation of a constitutional, statutory, or other clearly established right . . . or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive."  *Yanero*, 65 S.W.3d at 523.  As with Doe's federal claims, Doe has not alleged a "clearly established" violation of state law; as explained in Sections II(F)-(J), Doe's state-law claims facially lack merit.  Therefore, Doe cannot establish bad faith through violation of a clearly established right.

Additionally, Doe's conclusory allegations that Ms. Hourigan acted with subjective malice, (*see, e.g.*, Compl.  ¶ 28), do not defeat Ms. Hourigan's claim to official qualified immunity.  Although Kentucky's qualified official immunity doctrine retains a subjective element—unlike its federal counterpart, *see Harlow v. Fitzgerald*, 457 U.S. 800, 817-19 (1982)—Doe's allegations regarding bad faith do not satisfy the federal pleading standard.  *See* Section II(A) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  In federal court, "[b]are allegations of intent or malice" are insufficient to survive a motion to dismiss.  *Black v. Corr. Officers*, No. 2:10-CV-13368, 2010 U.S. Dist. LEXIS 93796, at *5 (E.D. Mich. Sep. 9, 2010) (citations omitted).  Throughout her complaint, Doe offers no supporting facts that could make it "plausible" that Ms. Hourigan did, in fact, harbor malice or discriminatory animus towards individuals with disabilities.  Instead, she merely claims with no support that Ms. Hourigan had such intent.  Consequently, because Doe's allegations of malice are nothing more than "[t]hreadbare recitals of the elements of a cause of

action," *Iqbal*, 556 U.S. at 678, they cannot defeat Ms. Hourigan's claim to official qualified immunity under Kentucky law.

Because Doe's complaint concerns discretionary actions, and because Doe has not plausibly alleged "bad faith," the state-law claims against Ms. Hourigan in her individual capacity should be dismissed pursuant to Kentucky's qualified official immunity doctrine.

**B.     This Court lacks subject matter jurisdiction over the remainder of Doe's claims against the KBA Defendants due to the Eleventh Amendment.**

Pursuant to the Eleventh Amendment, this Court lack subject matter jurisdiction over Doe's claims against the KBA, the Board of Governors, the KYLAP Foundation, and Ms. Hourigan in her official capacity.

The Eleventh Amendment grants immunity to the states from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The amendment divests the federal courts of subject matter jurisdiction over states and their agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Its reach is all-encompassing and "bars all suits [in the federal courts], whether for injunctive, declaratory or monetary relief, against the state and its departments," *Thiokol v. Dep't of Revenue*, 987 F.2d 376, 381 (6th Cir. 1993), including unconsented suits brought by states' own citizens, *see, e.g.*, *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001).

"Congress may . . . abrogate [a state's Eleventh Amendment] immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 726 (2003). To determine whether Congress validly exercised its § 5 enforcement power, courts must determine: (1) the constitutional right or rights that Congress sought to enforce when it enacted the statute at issue, (2) whether the statute

18

was passed in response to a documented history of relevant constitutional violations and (3) whether the congressional statute is "congruent and proportional" to the constitutional violations at issue.  *See City of Boerne v. Flores*, 521 U.S. 507, 529-36 (1997).  Further, "Congress' power 'to enforce' the [Fourteenth] Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text."  *Kimel v. Florida Bd. of Regents*, 528 U.S.  62, 81 (2000) (citing *City of Boerne*, 521 U.S. at 518).

> 1. <u>The KBA, the KBA Board of Governors, the KYLAP Foundation, and Ms. Hourigan in her official capacity are state entities eligible for Eleventh Amendment immunity.</u>

Doe alleges that the KBA, the KBA Board of Governors, the KYLAP Foundation, and Ms. Hourigan in her official capacity are state entities.  (*See* Compl. ¶¶ 169-171) (alleging that the KBA Defendants are state entities or employees).  Case law and rules of the Supreme Court of Kentucky confirm that they are state entities eligible for Eleventh Amendment immunity.

Eleventh Amendment immunity extends to actions against state bar associations and other entities that are arms of a state supreme court in matters involving the admission of attorneys to the state bar.  *See Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 615 (6th Cir. 2003).  Here, the KBA's status as an arm of the Supreme Court of Kentucky is grounded in both Section 116 of the Kentucky Constitution and the decisions of the Supreme Court of Kentucky. *See Ex parte Auditor of Public Accounts*, 609 S.W.2d 682, 684-85 (Ky. 1980).  Likewise, multiple federal courts have specifically recognized that the KBA is entitled to Eleventh Amendment immunity.  *See Deters v. Ky. Bar Ass'n*, 130 F. Supp. 3d 1038, 1046 (E.D. Ky. 2015) ("Due to its relation to the Kentucky Supreme Court, the KBA is therefore immune from suit."); *Mischler*, 2008 U.S. Dist. LEXIS 71559, at *11 (KBA is immune from liability under the Eleventh Amendment).

19

The Board of Governors is the governing body of the KBA, SCR 3.070, and also is "an arm of the Supreme Court." *Deters v. Ky. Bar Ass'n*, 646 F. App'x at 470 n.1. Similarly, the KYLAP Foundation, which was established by the Board of Governors, SCR 3.910(8), and the KYLAP Program, which was established by the Supreme Court of Kentucky acting through the KBA, SCR 3.910(1), are arms of the Supreme Court. Therefore, the Board of Governors, the KYLAP Foundation, and the KYLAP Program are eligible for Eleventh Amendment immunity.

Finally, because Ms. Hourigan's employer (the KBA), is an arm of the Supreme Court, Doe's claims against Ms. Hourigan in her official capacity are eligible for Eleventh Amendment immunity. *See, e.g.*, *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009) (a damages claim brought against a state official in his or her official capacity "is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.").

2.    The Eleventh Amendment bars Doe's ADA Title II claim (Count I).

Congress intended Title II of the ADA to abrogate states' sovereign immunity, as the statute specifically provides that "[a] state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. But whether Congress validly exercised its § 5 enforcement powers with respect to Title II must be assessed on a case-by-case basis under a three-part test:

> (1) which aspects of the State's alleged conduct violated Title II;
> (2) to what extent such misconduct also violated the Fourteenth
> Amendment; and (3) insofar as such misconduct violated Title II
> but did not violate the Fourteenth Amendment, whether Congress's
> purported abrogation of sovereign immunity as to that class of
> conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006). Thus, "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth

Amendment, Title II validly abrogates state sovereign immunity." *Id.* (emphasis in original). However, if a plaintiff alleges conduct that violates Title II but does not violate the Fourteenth Amendment, *Georgia*'s third prong must be addressed. *Id.*

For the purposes of this argument only, the KBA Defendants do not contest that Doe has stated a claim for violations of Title II of the ADA. Therefore, because Doe fails the second and third prongs of the *Georgia* test, her ADA Title II claims against the KBA, the KBA Board of Governors, the Kentucky Lawyers' Assistance Program Foundation, and Ms. Hourigan in her official capacity, are barred by the Eleventh Amendment.

        a.    *Prong Two of the* Georgia *Analysis: Doe fails to state a claim for a violation of the Fourteenth Amendment.*

Doe alleges that the defendants violated three rights provided by the Constitution: (1) due process, (2) equal protection, and (3) access to the courts. (Compl. ¶¶ 250-266). Her allegations with respect to each fail to state a violation of the Fourteenth Amendment.

First, with respect to her due process allegations, Doe has not identified a property interest that is protected by the Due Process Clause of the Fourteenth Amendment. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). Thus, for a plaintiff to have a viable due process claim, she first must have a liberty or property interest. *Id.* "Property interests, of course, are not created by the Constitution." *Id.* at 577. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

Here, Doe alleges that her bar licenses are property interests protected by the Fourteenth Amendment. (Compl. ¶ 251). However, the Supreme Court of Kentucky has unequivocally rejected that contention: "[I]t has long been the case that a license to practice law 'is not an

absolute right, but a privilege only.'"  *Ky. Bar Ass'n v. Deters*, 406 S.W.3d 812, 822 (quoting

*Commonwealth ex rel.  Ward v. Harrington*, 98 S.W.2d 53, 57 (1936)); *see also Deters*, 130 F.

Supp. 3d at 1050-52 (plaintiff had no property interest in his license to practice law).

      Other courts similarly have held that "the right to practice law is not a property right

protected by the Due Process Clause." *Maynard v. U S. Dist. Court*, 701 F. Supp. 738, 743 (C.D.

Cal. 1988); *see also, e.g.*, *In re Thatcher*, 190 F. 969, 974 (C.C.N.D. Ohio 1911) ("We wholly

disagree with respondent that the right to practice law is a property right, to be treated with all

the incidents peculiar to property."); *Emmons v. Smitt*, 58 F. Supp. 869, 873 (E.D. Mich. 1944)

("The right to practice law is NOT A PROPERTY RIGHT.") (emphasis in original); *cf. In re

Roberts*, 682 F.2d 105, 107 (2d Cir. 1982) (finding no cognizable property right to practice law

in federal district court).  Accordingly, because a bar license is not a property right protected by

the Fourteenth Amendment, Doe's due process claim fails as a matter of law and Doe cannot

establish the *Georgia* test's second prong with respect to the claim.

      Second, Doe fails to allege a violation of the Equal Protection Clause.  Because disability

is not a suspect class for purposes of the Equal Protection Clause, only rational basis review

applies.[6]  *Cleburne* v.  *Cleburne Living Center, Inc.,* 473 U.S. 432, 446 (1985).  "Under the

rational basis test, courts will not overturn government action 'unless the varying treatment of

different groups or persons is so unrelated to the achievement of any combination of legitimate

purposes that [the court] can only conclude that the [government's] actions were irrational.'"

---

[6] To the extent that Doe alleges that she is entitled to heightened scrutiny as a disabled person, Sixth Circuit precedent establishes that such a claim cannot support her ADA Title II claim.  *Babcock*, 812 F.3d at 534 ("[A]n alleged violation of the Equal Protection Clause based on heightened scrutiny as a member of a suspect class . . . cannot serve as a basis for Title II liability.") (citations omitted); *Mingus v. Butler*, 591 F.3d 474, 483 (6th Cir. 2010) (distinguishing between equal protection claims based on heightened scrutiny as a member of a suspect class and equal protection claims asserting challenges under rational basis review for purposes of Title II and Eleventh Amendment analysis).

*United States v. Green*, 654 F.3d 637, 651-52 (6th Cir. 2011) (brackets in original) (quoting

*Kimel*, 528 U.S. at 84).  Thus, Doe can prove her equal protection claim against the KBA

Defendants only by "negativing every conceivable basis that might support the government's

decision" or "showing an illegitimate motive such as animus or ill will."  *Id.* at 652.

Doe claims that the defendants "treat[ed] abled and disabled applicants for membership

differently" and "utilize[d] an applicant's disability as a justification for more stringent character

and fitness investigations, conditional admission and punitive requirements."  (Compl. ¶¶ 260-

61).  However, the state has a rational and legitimate interest in ensuring that applicants to the

state bar are fit to practice law.  *See Oliver v. Va. Bd. of Bar Exam'rs*, 312 F. Supp. 3d 515, 535

(E.D. Va. 2018).  Some individuals' mental illness precludes them from having such fitness.

Accordingly, when an applicant identifies as having a mental illness or other disability that could

affect her ability to practice law, it is rational for a state to make additional investigations and

impose conditions on her admission to ensure that she is, in fact, fit to practice law, both

currently and in the future.  *Cf. Applicants v. Tex. State Bd. of Law Exam'rs*, No.  A 93 CA 740

SS, 1994 U.S. Dist. LEXIS 21290, at *9 (W.D. Tex. Oct. 11, 1994) ("Bipolar disorder,

schizophrenia, paranoia, and psychotic disorders are serious mental illnesses that may affect a

person's ability to practice law. . . .  The fact that a person may have experienced an episode of

one of these mental illnesses in the past but is not currently experiencing symptoms does not

mean that the person will not experience another episode in the future or that the person is

currently fit to practice law.").  The alleged investigations and conditions imposed on Doe

therefore had a rational basis in furthering a legitimate government interest.

Likewise, Doe's conclusory allegations that the defendants all acted with discriminatory

animus, (Compl. ¶ 253), do not save her claim.  Under the pleading standard established by

*Twombly* and *Iqbal*, "[b]are allegations of intent or malice are also insufficient to establish a constitutional violation." *Black*, 2010 U.S. Dist. LEXIS 93796, at *5 (citations omitted). Throughout her complaint, Doe offers no supporting facts that could make it "plausible" that any of the KBA Defendants did, in fact, harbor malice or discriminatory animus towards individuals with disabilities. Instead, she merely claims with no support that they had such an intent. Consequently, because Doe's allegations of malice are nothing more than "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, they cannot support her equal protection allegations.

Finally, Doe's claim that she has been denied "access to the courts" does not state a cognizable violation of the Fourteenth Amendment. The right of "access to the courts" concerns the right of a *litigant* to access the courts, not the right of a lawyer to represent litigants in court. Thus, although the Supreme Court in *Tennessee v. Lane*, 541 U.S. 509 (2004), held that an ADA Title II claim against a state alleging a violation of the right to "access the courts" could go forward notwithstanding the Eleventh Amendment, "the right of access to the courts discussed in *Lane* is not a right to practice law and represent a client before the courts." *Oliver*, 312 F. Supp. 3d at 529. "Rather, the Supreme Court was concerned with a criminal defendant's right to be present during trial and to confront witnesses against him, with a civil litigant's right to a meaningful opportunity to be heard, and with the public's right to attend—*i.e., physically* access—court proceedings." *Id.* (emphasis in original).

Likewise, outside of the context of Title II, courts agree that the right to "access the courts" does not include an individual's right to practice law as an attorney. *See Paciulan v. George*, 38 F. Supp. 2d 1128, 1138 (N.D. Cal. 1999), *aff'd* 229 f.3d 1226 (9th Cir. 2000) ("The fact that Rule 983 prohibits residents of California from practicing law in California pro hac vice

does not deny plaintiffs 'meaningful access to the courts.' Plaintiffs may still bring their claims in California courts as litigants; they simply may not bring claims as lawyers without first satisfying California's rules for admission to the state bar."); *accord Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch*, 973 F. Supp. 2d 1082, 1109 (D. Ariz. 2013) (quoting *Paciulan*, 38 F. Supp. 2d at 1138)); *see also Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts*, 852 F.3d 178, 187 (2d Cir. 2017). As a result, because Doe does not allege that she was prevented from pursuing her own claims in court as a litigant, she has not cognizably alleged a violation of her right to "access the courts."

> b.   *Prong Three of the* Georgia *Analysis: Congress did not validly abrogate states' Eleventh Amendment immunity in this case.*

Because Doe does not allege any cognizable violations of the Fourteenth Amendment, the Court must turn to the third prong of the *Georgia* test, which requires courts to consider the three-part *City of Boerne* inquiry laid out above. *See* 521 U.S. 507, 529-36. This approach is consistent with *Lane*, in which the Supreme Court analyzed each of the *City of Boerne* prongs with respect to the right at issue. *See* 521 U.S. at 527; *see also Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012) (with respect to the third prong of *Georgia*, holding that "the correct approach, as dictated by the Court's approach in *Lane*, is to analyze all three prongs with regard to the particular right and class of state action at issue"); *Toledo v. Sanchez*, 454 F.3d 24, 35 (1st Cir. 2006) ("Some appellate courts have chosen to interpret . . . *Lane* as conclusively establishing that Title II survives the first two steps of the *City of Boerne* inquiry . . . [T]he sounder approach is to focus the entire *City of Boerne* test on the particular category of state conduct at issue.").

Under the first step in the *City of Boerne* analysis—the identification of the right sought to be protected by Title II of the ADA—this case concerns the right of a disabled person to practice her chosen profession (specifically, the practice of law). This is not a fundamental right,

and only rational basis review applies.  *See Guttman*, 669 F.3d at 1118 (in an ADA Title II case, revocation of a disabled physician's medical license not subject to heightened scrutiny); *Oliver*, 312 F. Supp. 3d at 529 (in an ADA Title II case, allegedly disabled applicant to the Virginia bar did not assert a fundamental right"); *see also Cleburne,* 473 U.S. at 446 (disability not a status entitled to heightened scrutiny under Fourteenth Amendment); *Frost v. Boyle*, No. 1:06 CV 2649, 2008 U.S. Dist. LEXIS 21322, at *29-30 (N.D. Ohio Mar. 4, 2008) ("[T]he Third, Fifth, and Ninth Circuits have held that 'the right to practice law is not a fundamental right for purposes of due process or equal protection analysis.'") (collecting cases) (citation omitted).  In short, "the  Fourteenth Amendment  does not guarantee any fundamental right to become a state-licensed attorney."  *Oliver*, 312 F. Supp. 3d at 529.

Next, the *City of Boerne* analysis asks whether the statute at issue—i.e., Title II of the ADA—was passed in response to a documented history of relevant constitutional violations.  As courts have explained, a review of the legislative record of the ADA reveals that "Congress has never specified a longstanding pattern of disability discrimination in professional licensing, much less any irrational discrimination that rose to the level of a constitutional violation."  *Guttman*, 669 F.3d at 1119; *accord Oliver*, 312 F. Supp. 3d at 531 (finding "no historical record to indicate that Congress enacted Title II to address irrational disability discrimination in professional licensing.").  This conclusion "alone suggests Title II likely does not validly abrogate sovereign immunity in the area of professional licensing."  *Guttman*, 669 F.3d at 1119.

The third and final step of the *City of Boerne* analysis requires a determination of whether the congressional statute is "congruent and proportional" to the constitutional violations at issue.  "Whether a remedial provision is an appropriate response (i.e., congruent and proportional) to a purported class of constitutional violations depends on how well-tailored the congressional

26

remedy is to the nature of the right and the history of violations." *Id.* at 1122.  Here, given that

rational basis review applies and there is not a documented history of relevant violations, Title

II's broad reach cannot be deemed "congruent and proportional."

As the Tenth Circuit in *Guttman* reasoned, Title II is not a "congruent and proportional"

response to violations of a disabled person's right to practice in his or her chosen profession

because the right "is not fundamental," there is "very little evidence of a widespread pattern of

irrational state discrimination in professional licensing," and Title II is "a wide-reaching statute

that inhibits a state's ability to safely and efficiently make professional licensing decisions." *Id.*

at 1124.  Likewise, with respect to disabled individuals' ability to take the bar exam, the Eastern

District of Virginia explained that "as applied to the historically 'lesser' harm of disability

discrimination in professional licensing, the strong measures created in Title II to address truly

widespread deprivations of fundamental rights appear unwarranted." *Oliver*, 312 F. Supp. 3d at

532.  A contrary result "would require states to justify a significant range of rational, everyday

licensing decisions that would otherwise be constitutional," and "[t]he potential magnitude of

this opening counsels against abrogation." *Id.*

Thus, to the extent that Doe alleges violations of rights that are protected by Title II but

that are not protected by the Fourteenth Amendment, Congress did not validly abrogate

Kentucky's Eleventh Amendment immunity.  As a result, Doe's ADA Title II claims against the

KBA, the KBA Board of Governors, the Kentucky Lawyers' Assistance Program Foundation,

and Ms. Hourigan in her official capacity are barred by the Eleventh Amendment.

        3.    The Eleventh Amendment bars Doe's Rehabilitation Act claims (Count II).

As described below in Section II(D)(1), Doe is simply incorrect when she claims that §

504 of the Rehabilitation Act applies to "public entities" that are not recipients of federal funds.

(Compl. ¶233).  Further, that none of the KBA Defendants have received federal funds negates the basis for states' waivers of Eleventh Amendment immunity for Rehabilitation Act claims.

Typically, the Eleventh Amendment does not bar Rehabilitation Act claims against state entities.  *Carten v. Kent State Univ.*, 282 F.3d 391, 397 (6th Cir. 2002).  In 1986, Congress amended the Rehabilitation Act to expressly provide that states shall not be immune under the Eleventh Amendment for a violation of § 504 of the Rehabilitation Act.  *See* 42 U.S.C.S. § 2000d-7.  Thus, when states voluntarily decide to accept federal funds despite § 2000d-7—the receipt of which triggers the application of the Rehabilitation Act—they waive their Eleventh Amendment immunity.  *Id.*; *see also Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir. 2001).

Here, however, none of the KBA Defendants receive federal funds.  Nor does Doe's complaint allege as much.  Without any receipt of federal funds, there is no basis for concluding that the KBA Defendants consented to be sued under the Rehabilitation Act.  *See Oliver*, 312 F. Supp. 3d at 533 ("The Court accordingly finds that the [Virginia] Board [of Bar Examiners] does not accept federal funds and has not waived its Eleventh Amendment sovereign immunity with regard to the [Rehabilitation Act].").  As a result, the Eleventh Amendment bars Count II as it pertains to the KBA, the KBA Board of Governors, the Kentucky Lawyers' Assistance Program Foundation, and Ms. Hourigan in her official capacity.

4.     The Eleventh Amendment bars Doe's constitutional claims even if she had brought her action pursuant to 42 U.S.C. § 1983 (Counts III-V).

Counts III-V of Doe's complaint, which seemingly assert direct claims for violations of the Fourteenth Amendment, fail because no such direct causes of action exist.  *Thomas v. Shipka*, 818 F.2d 496, 503 (6th Cir. 1987), *vacated on other grounds*, 488 U.S. 1036, 109 S. Ct. 859, 102 L. Ed. 2d 984 (1989); *see also Blankenship v. Lewis Cnty. Fiscal Court*, No. 06-147-EBA, 2007 U.S. Dist. LEXIS 92515, at *11-12 n.1 (E.D. Ky. Dec. 17, 2007) (collecting cases).

28

Instead, "[42 U.S.C.] § 1983 provides the exclusive remedy for constitutional violations." *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014).

But even if Doe had sued under § 1983, the Eleventh Amendment would still bar her constitutional claims against the KBA, the KBA Board of Governors, the Kentucky Lawyers' Assistance Program Foundation, and Ms. Hourigan in her official capacity. Congress did not abrogate states' Eleventh Amendment immunity when it enacted § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (citing *Quern* v. *Jordan*, 440 U.S. 332 (1979)) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. . . . That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern*.").

As a result, this Court lacks subject matter jurisdiction to consider the constitutional claims in Counts III-V with respect to the KBA, the KBA Board of Governors, the Kentucky Lawyers' Assistance Program Foundation, and Ms. Hourigan in her official capacity, even if brought as § 1983 claims.[7]

5. The Eleventh Amendment bars Doe's state law claims (Counts VI-X).

"The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007) (citing *Pennhurst*, 465 U.S. at 121). "The federal courts are simply not open to such state law challenges to official state

---

[7] Additionally, the KBA, the Board of Governors, and the KYLAP Foundation are not "person[s] within the meaning of § 1983." *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). This defense arises as a matter of statutory construction and Congressional intent, and thus exists independently of the KBA Defendants' Eleventh Amendment immunity. *Id.* at 64-66.

action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment." *Id.* at 521.

Kentucky has not waived its Eleventh Amendment immunity for any of the state-law claims in Counts VI-X.  With respect to Count VI, even if Kentucky has waived its immunity in *state courts* for claims under the KCRA, it has not done so with respect to federal court.  *See McCollum v. Owensboro Cmty. & Tech. Coll.*, No. 4:09CV-00121-M, 2010 U.S. Dist. LEXIS 42336, at *10 (W.D. Ky. Apr. 29, 2010) (collecting cases).  "[A] State may retain Eleventh Amendment immunity from suit in federal court even if it has waived its immunity and consented to be sued in its state courts." *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S.  459, 465 (1945)).

Nor has Kentucky waived its immunity from suit in federal court for any common-law tort claims, including those alleged in Counts VII-X.  *See id.* (dismissing, among other state-law claims, a common-law claim for intentional infliction of emotional distress on Eleventh Amendment grounds); *see also Lanier v. Ky. Comm'n on Human Rights*, No.  3:06-CV-602-S, 2007 U.S. Dist. LEXIS 61086, at *8-9 (W.D. Ky. Aug. 20, 2007) (holding that "Kentucky has not waived its immunity from suit in federal court for . . . common law tort claims").

Consequently, all of Doe's state-law claims brought against the KBA, the KBA Board of Governors, the Kentucky Lawyers' Assistance Program Foundation, and Ms. Hourigan in her official capacity are barred by the Eleventh Amendment.

**C.**     **Doe's state-law claims are barred by SCR 2.009 and Kentucky's judicial statements privilege.**

Doe's state law claims against the KBA Defendants are also barred by SCR 2.009 and the judicial statements privilege.  SCR 2.009 provides:

Any person who communicates information to a member of the Board [of Bar Examiners], Committee [on Character and Fitness] or its affiliates concerning an

applicant for admission to the Kentucky Bar ***shall be granted immunity from all civil liability which might result from said communication***.

(emphasis supplied).  Thus, to the extent that Doe's claims are premised on Ms. Hourigan's alleged statements to Ms. Feamster or other members of the Board of Bar Examiners, the Committee on Character and Fitness, the Office of Bar Admissions, or any other of their affiliates—such as Doe's allegations in paragraphs 313-326—they are barred by SCR 2.009.

The judicial statements privilege similarly immunizes all such statements so long as they are relevant to the proceeding.  *See Morgan v. Botts*, 348 S.W.3d 599, 602 (Ky. 2011) (disciplinary complaints to the KBA).  The privilege also extends to civil claims arising in connection with the filing or initiation of such a proceeding.  *Id.* at 605 (explaining that the judicial statement "privilege extends to any claim relating to the act of filing the bar complaint, such as abuse of process, wrongful use of civil proceedings, or malicious prosecution.")

Although *Morgan* involved the initiation of an attorney disciplinary investigation and action, the reasons for the application of the privilege to such proceedings are equally applicable to character and fitness investigations and proceedings by and before the Committee on Character and Fitness.  In applying the existing judicial statements privilege to attorney disciplinary proceedings, the Supreme Court of Kentucky explained in *Morgan*:

> In order to maintain a self-regulating profession, the investigation of unethical conduct must be free from threat of *any* civil liability.  Any lesser immunity would have a chilling effect on the reporting of attorney misconduct . . . . [A]pprehension of personal liability for presenting a question of professional responsibility to the disciplinary administrator might tend to subvert the system established for ensuring persons holding licenses to practice law are fit to be entrusted with professional and judicial matters.

(emphasis in original) (quoting *Jarvis v. Drake*, 830 P.2d 23 (Kan. 1992)).  Proceedings before the Committee on Character and Fitness, like disciplinary proceedings, are intended to ensure that persons seeking admission to practice law are "fit to be entrusted with professional and

31

judicial matters" *Id.* The only difference between the two is the point in the professional career of the person being investigated that the proceeding takes place. The need for reporting and candor is equally present in both proceedings.

Doe's state law claims all arise in connection with the proceedings before Committee on Character and Fitness to determine Doe's fitness to practice law in the Commonwealth. The KYLAP agreements were proffered at the behest of the Committee on Character and Fitness and in connection with Doe's conditional admission agreement with the committee. Ms. Hourigan's alleged statements concerning Doe's fitness to practice law likewise were made to and in connection with the committee's proceedings and are protected by both SCR 2.009 and the judicial statements privilege.[8]

Doe's state law claims must be dismissed.

## II.   DOE'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Doe's complaint should also be dismissed in its entirety for a second and independent reason: It fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### A.   Standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must contain sufficient facts to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556-557. The plausibility standard asks for "more than a sheer possibility that a defendant has acted unlawfully;" instead, a plaintiff must plead facts from which the Court can reasonably infer

---

[8] *Morgan* recognized that statements not made in connection with the disciplinary proceeding were not protected by the privilege. *See* 348 S.W.3d at 605-606. Doe alleges Ms. Hourigan made statements on April 28, 2016 on the steps of the Capitol. (Compl. ¶ 82). Those statements were made to Doe in connection with discussions between Doe and Ms. Hourigan regarding the KYLAP Agreement. The agreement, in turn, was part of the Committee on Character and Fitness' proceedings and thus are protected. To the extent the Court determines the privilege is not applicable to Ms. Hourigan's alleged April 28, 2016 statements, Doe's state law claims are barred for the additional reasons discussed herein.

that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  It is not sufficient

to merely allege actions that are "consistent with" liability.  *Id.*  Further, while the Court must

accept all well-pled allegations as true, the Court need not accept allegations that state only legal

conclusions.  *Id.*  Thus, where the well-pled facts do not show more than the "mere possibility of

misconduct," the motion to dismiss must be granted.  *Id.* at 679.

### B.    Doe's complaint ignores the distinctions between the various defendants.

#### 1.    Doe's complaint alleges no wrongdoing by the KBA Board of Governors and the KYLAP Foundation.

Notwithstanding the plaintiff's penchant for prolixity, Doe's complaint lacks any

allegations that the Board of Governors and the KYLAP Foundation took part in the actions of

which she now complains.  Her complaint against them therefore must be dismissed for failure to

state a claim.  *See, e.g.*, *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th

Cir. 2011) (Plaintiff required to plead "'factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'")

Doe's complaint names the Board of Governors in its caption and identifies the Board of

Governors in its introductory paragraph and paragraph 6, but does not otherwise specifically

mention the Board of Governors in the 114 paragraphs comprising the "Background and Facts"

section of her complaint.  The absence of factual allegations regarding alleged misconduct by the

Board of Governors is even more striking in light of the detailed nature of the allegations that *are*

contained in the 32 pages of the "Background and Facts" section.  The Board of Governors then

only appears in paragraphs 169 and 229 of the portion of Doe's complaint alleging her claims.

Even there the Board of Governors is mentioned only to include it in the definition of the term

"state defendants."

Doe cannot meet her obligation under Fed. R. Civ. P. 8(a)(2) simply by defining "state defendants" to include the Board of Governors, along with the other six organizational defendants, and then alleging in a conclusory fashion that the state defendants acted illegally and tortiously.  (*See generally* Compl. ¶¶ 169-290; 336-345).  Such non-specific, conclusory allegations are just the sort of "the defendant-unlawfully-harmed-me accusation" proscribed by *Iqbal*.  *See* 556 U.S. at 678.  Nowhere in the 191 paragraphs setting out her claims (or anywhere else in her complaint) does she specifically identify what action the Board of Governors allegedly took or failed to take that gave rise to the claims she now brings.[9]

Fed. R. Civ. P. 8(a)(2) requires more.  Doe is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Twombly*, 550 U.S. at 556.  Because her complaint fails to identify the specific actions allegedly taken by the Board of Governors that give rise to her claims, it falls short of the minimal requirements of *Iqbal* and *Twombly*.  *See, e.g.*, *Rittner v. Perez*, No. 18-3190, 2018 U.S. App. LEXIS 30480, at *9 (6th Cir. 2018) ("The district court did not err in concluding that these allegations were too vague and conclusory to state a claim under Title II of the ADA ***because they did not identify specific actions taken by specific defendants*** . . . .") (emphasis added).

Doe's factual allegations against the KYLAP Foundation are even more lacking.  Beyond listing the KYLAP Foundation in the caption and conflating it with the KYLAP Program in paragraph 18, Doe's complaint stands mute with respect the KYLAP Foundation.  There does not appear to be a single factual allegation involving the KYLAP Foundation in the complaint.

Doe's complaint fails to state a claim against the KYLAP Foundation for a second reason: the KYLAP Foundation is not the KYLAP Program.  As Doe alleges, the KYLAP

---

[9] Plaintiff also alleges the Board of Governors *received* communications she alleges were false and defamatory but does not appear to premise liability on that receipt.  (Compl. at ¶¶ 316, 330).

Foundation is a 501(c)(3) corporation established by the Board of Governors pursuant to SCR 3.910(8).  (Compl. ¶ 18).  Its purpose is "to obtain donations in order to furnish financial assistance, in the form of loans, to enable members of the legal community to obtain treatment for their impairment."[10]  SCR 3.910(8).  The KYLAP Program, by contrast, is operated by the KBA, SCR 3.910(1), and administered by the 15-member KYLAP Commission.  SCR 3.920.

Doe's complaint fails to plead any factual basis for concluding that either the Board of Governors or the KYLAP Foundation are liable for the conduct she alleges.  Her claims against both must be dismissed for failure to state a claim upon which relief may be granted.

> ### 2.   The KBA Defendants play no role in the admission of attorneys to practice law.

Doe's claims against the KBA Defendants in large part rest upon fundamental misunderstandings regarding the admission of attorneys to practice law in Kentucky.  Contrary to the allegations of the Complaint, the Supreme Court—and not its administrative arms such as the KBA, the Office of Bar Admissions, and the Office of Bar Admissions' two constituent agencies—bear ultimate control over who will be admitted to practice law in Kentucky.  Ky. Const. § 116; *In re Paniagua de Aponte*, 364 S.W.3d at 176.  Doe's conclusory allegations regarding the role played by the KBA Defendants in regulating her admission to the bar are simply contrary to law.  (*See e.g.*, Compl. ¶¶ 21 (The KBA "govern[s] the admission and discipline of attorneys in the state."); *id.* at ¶ 22 ("she received a 'conditional admission' to practice law from the KBA."); *id.* at ¶ 38 ("[t]he KBA granted her full and unconditioned licensure on August 28, 2018").

---

[10] The quote appearing in paragraph 18 of the Complaint immediately following the citation to SCR 3.910(8) appears nowhere in SCR 3.910(8), the remaining subsections of that rule, or 3.920, which governs the Kentucky Lawyer Assistance Program Commission.  The quote instead appears to track the language of the KYLAP Program homepage.  *See* https://www.kylap.org/

Even more problematic with respect to her claims against the KBA Defendants is the complaint's failure to distinguish between the separate legal existence and duties of the KBA Defendants, on one hand, and the Office of Bar Admissions and its two constituent parts, on the other.  The KBA is not the Office of Bar Admissions, the Committee on Character and Fitness, or the Board of Bar Examiners.  *See* SCR 3.025 (KBA); SCR 2.000 (Office of Bar Admissions); SCR 2.020 (Kentucky Board of Bar Examiners); SCR 2.040 (Committee on Character and Fitness).  It is the Committee on Character and Fitness and the Board of Bar Examiners—not the KBA Defendants—that perform on behalf of the Supreme Court the preliminary quasi-judicial functions related to the admission of attorneys to practice of which Doe complains.

The admissions application about which Doe complains is approved by the Board of Bar Examiners and Committee on Character and Fitness, and not the KBA Defendants.  SCR 2.018(1).  It is the Board of Bar Examiners, and not the KBA Defendants, that administers the bar exam for which Doe sat.  SCR 2.022.  It is the Committee on Character and Fitness, and not the KBA Defendants, that "is charged with the responsibility of determining the age, ***character and fitness***, education and general qualifications of an applicant for admission to the bar of the Commonwealth."  SCR 2.040(3) (emphasis supplied).  The Committee on Character and Fitness, and not the KBA Defendants, conducts the informal and formal hearings that form the basis for many of Doe's allegations.  SCR 2.050.  SCR 2.060 vests the Committee on Character and Fitness, and not the KBA Defendants, with the decision, subject to review by the Supreme Court, concerning "the eligibility of an applicant for admission to the bar of this state."  Finally, and most importantly for purposes of Doe's complaint, the Committee on Character and Fitness, and not the KBA Defendants, determines the need for and administers conditional admission:

36

> As part of its certification process for all applicants, . . . the Character and Fitness
> Committee may require that an applicant enter into an agreement as a condition of
> his/her admission to the Bar.  The conditions of admission, as determined by the
> Character and Fitness Committee, shall be set forth in a written agreement with
> specific terms and conditions.  These terms and conditions shall be monitored by
> the Committee or its agents and designees.

SCR 2.042(1).

Doe's conflation of the KBA Defendants on the one hand, with the Supreme Court, the

Committee on Character and Fitness, the Board of Bar Examiners, and the Office of Bar

Admissions on the other, does not state a plausible claim for relief as required by Fed. R. Civ. P.

8(a)(2).  *See Twombly*, 550 U.S. at 570.  "Plausibility is a context-specific inquiry . . . ." *Ctr. for

Bio-Ethical Reform*, 648 F.3d at 369.  A court need not accept legal conclusions as true; nor must

it accept "legal conclusions couched as factual allegations." *Id*.  Certainly, the Court need not

accept Doe's facially incorrect legal conclusions regarding the role of the KBA Defendants in the

admission process as true.  Moreover, the determination of whether an allegation is plausible

requires that this Court "draw on its experience and common sense." *Iqbal*, 556 U.S. at 664.

Allegations misidentifying as a matter of law the defendant charged with administering the

admission process, and that are premised upon a facially incorrect reading of the Rules of the

Supreme Court of Kentucky, comport with neither common sense nor experience and fail to

satisfy Fed. R. Civ. P. 8(a)(2).

Doe's repeated conflation of the KBA Defendants with the Supreme Court, the Board of

Bar Examiners, the Committee on Character and Fitness, and the Office of Bar Admissions

throughout most of the 345 paragraphs and 71 pages of her complaint creates a knotted ball of

twine that is almost impossible for the Court and the KBA Defendants to unravel.  Nor should

they be required to do so.  *Twombly* and *Iqbal* require that Counts III-VII and IX-X, all of which

37

center upon Doe's misunderstanding of the role played by the KBA Defendants in her admission to practice law in Kentucky, be dismissed.

### C.    Count I should be dismissed as to each of the KBA Defendants.

Doe alleges in Count I that each of the KBA Defendants violated Title II of the ADA. Doe broadly alleges that all of the "state defendants" and their agents discriminated against her in violation of the ADA.  Doe's ADA claims are barred by the applicable statute of limitations. Moreover, Doe's ADA claims should be dismissed as against Ms. Hourigan in her individual capacity because there is no individual liability under the ADA.

### 1.    Count I is time-barred.

The statute of limitations for ADA claims is one year. *Alja-Iz v. Ramsey*, No. 3:14-CV-618-DJH, 2017 U.S. Dist. LEXIS 213789, at *18-19 (W.D. Ky. Sep. 13, 2017) (*recommendation adopted by Alja-Iz v. Ramsey*, 2017 U.S. Dist. LEXIS 213548 (W.D. Ky. Sep. 22, 2017)) (*aff'd by Alja-Iz v. Ramsey*, 2018 U.S. App. LEXIS 19461  (6th Cir. July 13, 2018)).  "Under federal law, the statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at *15-16.

Doe submitted the alleged discriminatory online application to take the Kentucky Bar Exam on December 9, 2015. (Compl. ¶ 50).  Doe then sat for the February 2016 Kentucky Bar Exam, (*id.* at ¶ 66), and was conditionally admitted and sworn in on April 28, 2016, (*id.* ¶ 29). Her conditional admission required that she enter into the KYLAP Agreement.  (*Id.* at ¶ 67).  On April 28, 2016, Doe received a proposed KYLAP Agreement that contained drug and alcohol monitoring; upon receipt she claimed that it violated the ADA.  (*Id.* at ¶¶ 82-85).  In May 2016, she made a complaint to the Department of Justice regarding alleged violations of the ADA.  (*Id.* at ¶ 104).  On July 29, 2016, Doe received a revised KYLAP agreement, with the drug and

alcohol monitoring conditions removed.  (*Id.* at ¶ 107).  The July 29, 2016 proposed agreement contained residency requirements and medical monitoring.  (*Id.*).

All of Doe's allegations supporting her ADA claims stem from the application requirements, issuance of the conditional license, and requirements imposed in the proposed KYLAP agreements.  Doe became aware of these issues—and specifically alleged that they violated the ADA—beginning no later than the spring and summer of 2016.  Thus, the alleged violations occurred well over one year before Doe filed this action on April 1, 2019.

Count I should be dismissed as time-barred as to each of the KBA Defendants.

> ### 2.   Count I must be dismissed as to Ms. Hourigan in her individual capacity.

Ms. Hourigan is the Program Director of KYLAP; Doe alleges ADA claims against Ms. Hourigan in her official capacity as director and in her individual capacity. (Compl. ¶ 19).

Under controlling Sixth Circuit precedent, "the proper defendant under a Title II [ADA] claim is the public entity or an official acting in his official capacity."  *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).  "Title II of the ADA does not [. . .] provide for suit against a public official acting in his individual capacity." *Id.*; *see also Lloyd v. City of Streetsboro*, No. 18-3485, 2018 U.S. App. LEXIS 36090, at *16 (6th Cir. Dec. 20, 2018) (affirming *sua sponte* dismissal of ADA Title II claims against a public official in his individual capacity) (*citing Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002)).  As a result, Count I must be dismissed as to Ms. Hourigan in her individual capacity.

> ### D.    Count II should be dismissed as to each of the KBA Defendants.

> ### 1.    The Rehabilitation Act is not applicable to the KBA Defendants.

Count II alleges claims against the KBA Defendants under the Rehabilitation Act, 29 U.S.C. § 794.  Doe asserts that 29 U.S.C. § 794 "applies to services provided by any 'public

entity' (without regard to whether the entity is a recipient of federal funds)." (Compl. ¶ 233). Doe is incorrect.

"It is well-established that [the ADA and the Rehabilitation Act] are quite similar in purpose and scope. The analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act." *McPherson v. Mich. High Sch. Ath. Ass'n*, 119 F.3d 453, 459-60 (6th Cir. 1997) (internal quotations and citations omitted). However, "the principal distinction between the two statutes is that coverage under the Rehabilitation Act is limited to entities receiving federal financial assistance, while the ADA's reach extends to purely private entities." *Id.* at 460.  "Under the Rehabilitation Act, plaintiffs must [. . .] allege that the defendant receives federal funds."[11]  *Id.*  The Sixth Circuit in *McPherson* speaks broadly, holding that the *entire* Rehabilitation Act applies only to "entities receiving federal financial assistance." *Id.*  It makes no exceptions for certain sections of the act. Importantly, 29 U.S.C. § 794 is titled "Nondiscrimination *under Federal grants and programs*." (emphasis added).  Doe's position that the federal funds requirement does not apply to 29 U.S.C. § 794 is untenable and incorrect.

Here, Doe failed to allege that any of the KBA Defendants receive federal funds.  Nor could she, as none of the KBA Defendants receive federal funds.  Accordingly, her claim must be dismissed.

---

[11] "To prevail in a Rehabilitation Act case, the plaintiff ultimately must prove (1) that he or she is a 'handicapped person' under the Act; (2) that he or she is 'otherwise qualified; (3) that he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his or her handicap; and (4) *that the program or activity receives federal funds*." *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police,* 91 F.3d 836, 841 (6th Cir. 1996) (emphasis added).

2.      Count II should be dismissed as against Ms. Hourigan in her individual capacity.

Doe alleges claims under the Rehabilitation Act against Ms. Hourigan in her official and her individual capacity.

The Rehabilitation Act, like the ADA, "does not impose personal liability upon individuals." *Lloyd*, 2018 U.S. App. LEXIS 36090, at \*17 (dismissing Rehabilitation Act claims brought against public official in individual capacity) (*citing Hiler v. Brown,* 177 F.3d 542, 547 (6th Cir. 1999); *Lee v. Mich. Parole Bd.,* 104 F. App'x 490, 493 (6th Cir. 2004)).

Because a public official cannot be sued in her individual capacity under the Rehabilitation Act, Count II should be dismissed as to Ms. Hourigan in her individual capacity.

**E.      Counts III-V should be dismissed as to each of the KBA Defendants.**

As explained in Sections I(B)(2)(a) and I(B)(4), Doe's constitutional claims fail because no direct cause of action exists for violations of the Fourteenth Amendment and because, even if she had sued under 42 U.S.C. § 1983, she has not plausibly alleged violations of the Fourteenth Amendment.  Accordingly, Counts III-V should be dismissed for failure to state a claim.

**F.      Count VI should be dismissed as to each of the KBA Defendants.**

Count VI attempts to assert claims against the KBA Defendants under the KCRA, KRS 344.010 *et seq.*  Nowhere in her complaint does Doe allege which provisions of the KCRA the KBA Defendants violated.  The KBA Defendants, and the Court, are thus left to speculate.

Because Doe alleges that the KBA Defendants are a labor organization, and because she incorporates language in her complaint from KRS 344.040(1)(b) proscribing discrimination by employers against their employees and applicants for employment, the KBA Defendants assume for purposes of this motion that Doe is alleging that the KBA Defendants violated KRS 344.060 (labor organizations) and KRS 344.040(1)(b) (employers).  Both claims fail.

41

To the extent Doe alleges acts of discrimination in violation of KRS 344.060 by the KBA Defendants purportedly acting as a labor organization, her KCRA claims fail because the KBA Defendants are not "labor organizations" as defined in the KCRA.  KRS 344.030(4) defines "labor organization" for purposes of the KCRA to mean an organization of any kind "which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and a conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization."

Doe has not alleged, nor can she allege, that the KBA Defendants exist for the purpose of dealing with employers concerning grievances, labor disputes, wages, terms of employment, or conditions of employment.  Doe's allegation in paragraph 268 of her complaint that the KBA Defendants are labor organization is nothing more than "a legal conclusion[] couched as [a] factual allegation[]."  As such, it fails to state a claim under *Twombly* and *Iqbal*.  *Ctr. For Bio-Ethical Reform, Inc.*, 648 F.3d at 369.

The same fate awaits the second of Doe's KCRA claims.  To the extent her complaint asserts a violation KRS 344.030(4), she fails to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Twombly*, 550 U.S. at 556.  In particular, she fails to allege—and cannot truthfully allege—facts sufficient to reasonably infer that the KBA Defendants were her employer, as defined at KRS 344.030(2), or that she was an employee, as defined at KRS 344.030(5)(a), of the KBA Defendants.

Doe's KCRA claims fail on their face and must be dismissed.

**G.     Count VII should be dismissed as to each of the KBA Defendants.**

To bring a claim for malicious prosecution under Kentucky law, a plaintiff must show:

42

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;

2) the defendant acted without probable cause;

3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;

4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

Doe fails to state a claim for malicious prosecution against the KBA Defendants for the fundamental reason that she does not allege that any of the KBA Defendants "initiated, continued, or procured" a civil judicial or administrative disciplinary proceeding against her. The only "proceedings" that Doe identifies in her complaint are the April 27, 2017 and July 6, 2018 hearings before the Committee on Character and Fitness.  Doe alleges that Ms. Feamster of the Office of Bar Admissions initiated the April 27, 2017 hearing after Doe reported to Ms. Feamster that she had accepted employment at a non-profit center.  (Compl. ¶¶ 108-110).  Doe also alleges that Ms. Feamster initiated a follow-up informal hearing before the Committee on Character and Fitness, which took place on July 6, 2018.  (*Id.* at ¶ 139).

Neither of these hearings have anything to do with the KBA Defendants.  Ms. Feamster is an employee the Office of Bar Admissions, not the KBA.  The Office of Bar Admissions is wholly separate and distinct from the KBA and the other KBA Defendants.  Nor does she allege how the KBA Defendants initiated the proceedings.  Thus, because Doe has not alleged, and cannot plausibly allege, that any of the KBA Defendants initiated any judicial or administrative proceeding against her, Count VII should be dismissed as to each of the KBA Defendants.

43

### H.      Count VIII should be dismissed as to each of the KBA Defendants.

Doe's barebones allegations of defamation in Count VIII cannot survive scrutiny under *Twombly* and *Iqbal* either.  Furthermore, any defamation claim with respect to the KBA Defendants is long since barred by the applicable one-year statute of limitations.

To state a claim for defamation under Kentucky law, "the following elements must exist: "[1.] defamatory language, [2.] about the plaintiff, [3.] which is published, and [4.] which causes injury to reputation."  *See, e.g.*, *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. App. 2011).  Doe alleges that the KBA Defendants "made false statements injurious to [her] reputation and good name," (Compl. ¶ 286), but provides no details whatsoever regarding the content of those purported statements, let alone when or where they were made.  At most, Doe claims that Ms. Hourigan "alleged that [Doe] was unfit to practice law because of her disability," but none of the quoted statements from Ms. Hourigan in Doe's complaint say any such thing.  Nor does Doe explain when or how any of the KBA Defendants ever published any purportedly defamatory information about her; even with respect to Doe's complaints regarding her alleged conversation with Ms. Hourigan after her swearing-in, Doe does not allege that anything that Ms. Hourigan said during that conversation was false.  (Compl. ¶¶ 83-87).  Thus, Doe has fallen far short of pleading a "plausible" claim for defamation as required by *Twombly* and *Iqbal*.

Moreover, even if Doe had plausibly alleged defamatory conduct by any of the KBA Defendants, her claim is time barred.  The statute of limitations for defamation in Kentucky is one year from the publication of the false statement.  *Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. App. 1980) (citing KRS 413.140(1)(d)).  Doe alleges no conduct by any of the KBA Defendants after July 2016.  (Compl. ¶ 107).  Therefore, any defamation claim she might have had against any of the KBA Defendants is barred by the statute of limitations.

## I.      Count IX should be dismissed as to each of the KBA Defendants.

The tort of improper interference with contractual relations requires proof of the

following:

> 1) the existence of a contract; 2) defendant's knowledge of the contract; 3) defendant's intent to cause a breach of that contract; 4) that defendant's actions in fact caused a breach of the contract; 5) that plaintiff suffered damages as a result of the breach; and 6) that defendant enjoyed no privilege or justification for its conduct.

*Seeger Enters. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 795 (Ky. App. 2017).  "[A]

person cannot tortuously [sic] interfere with a contract to which they are party."  *Ebonite Int'l,*

*Inc. v. Hickland*, No. 5:17-CV-00080-TBR, 2018 U.S. Dist. LEXIS 76604 at *12 (W.D. Ky.

May 7, 2018).

Doe's allegations in Count IX are confusing at best.  The contract she identifies is her

conditional agreement to practice law in Kentucky, which she alleges—albeit erroneously—she

entered into with the KBA.  (Compl. ¶ 292).  To the extent she founds her claims against the

KBA Defendants on their alleged tortious interference with a contract to which they were a party

(and she identifies no such contract) her claim fails as a matter of law.  *Ebonite Int'l, Inc.*, 2018

U.S. Dist. LEXIS 76604 at *12.

Even assuming Count IX can be read to allege the KBA Defendants interfered with Doe's

conditional admission agreement with the Committee on Character and Fitness (and ultimately

the Supreme Court), she fails to plead plausible allegations of fact that the KBA Defendants'

actions caused the claimed breach, or even how (or if) her conditional admission agreement was

ever "breached."  Instead, Doe uses Count IX to repeat a litany of grievances against Ms.

Hourigan that lack any plausible factual connection to the elements of the tort of improper

interference with contractual relations.

Count IX should be dismissed as to each of the KBA Defendants.

45

**J.      Count X should be dismissed as to each of the KBA Defendants.**

Doe alleges the tort of intentional infliction of emotional distress ("IIED") in Count X.

Her last claim fails because Doe has not adequately pled that the KBA Defendants acted with the

required mental state for an IIED claim.  *See, e.g.*, *Keaton v. G.C. Williams Funeral Home, Inc.*,

436 S.W.3d 538, 544 (Ky. App. 2013) (recognizing that IIED requires a showing that the

wrongdoer's conduct was "intentional or reckless").  As explained above, while Doe makes

conclusory allegations, including conclusory allegations of law masquerading as fact, that the

KBA Defendants acted with malice, nowhere does she plead any facts that would support an

inference that they acted with the required mental state.  Accordingly, her complaint fails to state

a claim for IIED upon which relief can be granted.

## CONCLUSION

Doe's claims against the KBA Defendants should be dismissed for the foregoing reasons.


Katie M. Glass
Robin E. McGuffin
STITES & HARBISON PLLC
250 West Main Street, Suite 2300
Lexington, Kentucky  40507-1758
Telephone:  (859) 226-2300

/s/ *Mark R. Overstreet*
Mark R. Overstreet
STITES & HARBISON PLLC
421 W. Main St.
P.O. Box 634
Frankfort, KY  40602-0634
Telephone:  (502) 223-3477

Bethany A. Breetz
STITES & HARBISON PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky  40202-3352
Telephone:  (502) 587-3400

*Counsel for Defendants Kentucky Bar
Association, Board of Governors of the
Kentucky Bar Association, Kentucky Lawyer
Assistance Program Foundation, Inc., and
Pamela Yvonne Hourigan in her Official and
Individual Capacities*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 31, 2019, I electronically filed the foregoing by using the CM/ECF system, which will send a notice of electronic filing to the following:

Britt Stevenson                 Mitchell T. Denham
brittstevensonlaw@gmail.com      mdenham@dbllaw.com

Sarah E. Adkins
Sarah.Adkins@ky.gov

*/s/ Mark R. Overstreet*

47