UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

JANE DOE                                                       PLAINTIFF

v.                                              CIVIL ACTION NO. 3:19-CV-236-JRW

SUPREME COURT OF KENTUCKY, et al.                         DEFENDANTS

## ORDER

1. The Court **GRANTS** Jane Doe's motion for leave to amend (DN 14).

2. The Court **DIRECTS** the Clerk to file Doe's Amended Complaint (DN 14-1).

3. The Court **GRANTS** the motions to dismiss (DNs 16, 18, & 19).

4. The Court **DENIES AS MOOT**:

    a. The first motions to dismiss (DNs 7, 8, 10);

    b. Doe's motion for an extension of time (DN 13);

    c. Doe's motion to proceed under a pseudonym (DN 33); and

    d. The Board Defendants' motion for leave to file an Amended Response in Opposition to Doe's motion for leave to proceed under a pseudonym (DN 37).

5. The Court **DISMISSES** Counts I, II, & III of the Amended Complaint, with prejudice.

6. The Court **DISMISSES** Counts IV & V of the Amended Complaint, without prejudice.

**MEMORANDUM OPINION**

Courts, journalists, and scholars have extensively documented the mental health issues that afflict lawyers.[1]  The problems begin in law school, where "law students have disproportionate levels of stress, anxiety, and mental health concerns compared with other populations."[2]  After graduation, lawyers suffer from depression at higher rates than non-lawyers.[3]  Not long ago, the Kentucky Bar Association President described a spike in Kentucky lawyers dying by suicide as "disproportionate" and "disconcerting."[4]

Jane Doe was a lawyer in Florida.  She moved to Kentucky.  She wanted to practice law here.  Bureaucrats didn't want her to.  They thought her mental disability made her unfit.  For over two years, they stopped her.  But she didn't give up.  And they eventually relented.

Then Doe sued them, alleging they had illegally asked about her mental health history and treatment, illegally forced her to turn over her medical records and her therapists' notes from their counseling sessions, and illegally treated her like a criminal because of her disability.

This case is not only about Jane Doe.  It's also about the lawyers who decide who else can be a lawyer.

---

[1] *See, e.g.*, *ACLU of Indiana v. Individual Members of the Indiana State Board of Law Examiners*, No. 1:09-cv-842-TWP-MJD, 2011 WL 4387470, at *1 (S.D. In. 2011); ROSA FLORES & ROSE MARIE ARCE, *Why Are Lawyers Killing Themselves?*, CNN.COM, Jan. 24, 2014, https://www.cnn.com/2014/01/19/us/lawyer-suicides/index.html;
PATRICK R. KRILL, RYAN JOHNSON, AND LINDA ALBERT, *The Prevalence of Substance Use and Other Mental Health Concerns Among American Attorneys*, 10 JOURNAL OF ADDICTION MEDICINE 46, 52 (Jan. 2016).

[2] JEROME M. ORGAN, DAVID B. JAFFE, & KATHERINE M. BENDER, *Suffering in Silence: The Survey of Law Student Well-Being and the Reluctance of Law Students to Seek Help for Substance Use and Mental Health Concerns*, 66 JOURNAL OF LEGAL EDUCATION 116, 121 (Autumn 2016).

[3] FLORES & ARCE, *Why Are Lawyers Killing Themselves?*.

[4] *Lawyer Suicides Concern Colleagues*, THE COURIER-JOURNAL, Jun. 3, 2013, https://www.usatoday.com/story/news/nation/2013/06/03/lawyer-suicides-concern-colleagues/2383627/.

Under the Kentucky Constitution, that power belongs to the Supreme Court of Kentucky.[5]

The court, in turn, delegates that job to its Bar Bureaucracy:

- The Character and Fitness Committee and Board of Bar Examiners comprise the Office of Bar Admissions.[6]

- The Character and Fitness Committee prohibits people from practicing law if the committee thinks they are immoral[7] or unfit.[8]

- The Board of Bar Examiners prohibits people from practicing law if they can't pass a timed exam that tests their ability to memorize whole areas of the law they will never again need to know anything about.[9]

- The Kentucky Bar Association decides who gets to stay a lawyer.[10]

- The Kentucky Lawyer Assistance Program keeps tabs on lawyers and aspiring lawyers who have mental health issues by monitoring their medications, counseling, where they live, and where they travel.[11]

Anyone with any power in this Bar Bureaucracy is a lawyer. So, just like an oil or drug cartel, those who are already selling something get to decide who else may sell that same thing. Of course, unlike most cartels, this one is legal. In fact, the Kentucky Constitution requires it.[12]

If Doe had sued the Bar Bureaucracy back when it stopped her from entering the market, she would have had standing to ask the Court to block it from treating her like it did. But you can't blame Doe for waiting to sue. If your goal is to persuade the Bar Bureaucracy's lawyers to let you

---

[5] Ky. Const. § 116 ("The Supreme Court shall, by rule, govern admission to the bar and discipline members of the bar.").
[6] SCR 2.000. Some of the Supreme Court Rules cited here have been recently amended due to the ongoing pandemic, but none of the recent amendments are material to this analysis.
[7] SCR 2.011(1); SCR 2.040(3).
[8] SCR 2.011(2); SCR 2.040(3).
[9] SCR 2.020(3); SCR 2.080.
[10] SCR 3.025; SCR 3.050; SCR 3.060; SCR 3.640(8)(d); SCR 3.645(4); *see, e.g.*, *Grinnell v. Kentucky Bar Association*, 602 S.W.3d 784 (Ky. 2020); *see also* SCR 3.035(1)(c) ("Failure to maintain a current address which allows for physical service of process with the Director [of the Kentucky Bar Association] may be prosecuted in the same manner as a violation of the Rules of Professional Conduct.").
[11] SCR 3.900; SCR 3.910(2); DN 14-1 ¶¶ 40, 72.
[12] Ky. Const. § 116.

join their club, it isn't a good strategy to poke them in the eye with a lawsuit that accuses them of violating the Americans with Disabilities Act and the United States Constitution.

Because the Bar Bureaucracy (finally) allowed Doe to practice law, she lacks standing for prospective relief. And because legislative and judicial immunity protect Bar Bureaucracies from money damages arising from the promulgation of bar rules and the adjudication of bar applications, the Court will dismiss Doe's federal claims. In addition, the Court declines to exercise supplemental jurisdiction over Doe's state-law claims.

The Bar Bureaucracy won this round against an applicant it deemed suspect and undesirable. But there will be more applicants — and more lawsuits. Some of those plaintiffs will have standing to seek prospective relief. And when they do, the Bar Bureaucracy will have to answer for a medieval approach to mental health that is as cruel as it is counterproductive.

I.

A.

Several federal and state courts have held that the Americans with Disabilities Act prohibits Bar Bureaucracies from unnecessarily interrogating applicants about their mental health.[13] So too did the Department of Justice. In 2014, it concluded that questions about applicants' mental health

---

[13] *In re Application of Underwood & Plano*, BAR-93-21, 1993 WL 649283, at *1 (Me. Dec. 7, 1993); *Ellen S. v. Florida Bd. Of Bar Examiners*, 859 F. Supp. 1489 (S.D. Fla. 1994); *Clark v. Virginia Bd. Of Bar Examiners*, 880 F. Supp. 430 (E.D. Va. 1995); *ACLU of Indiana v. Individual Members of the Indiana State Bd. of Law Examiners*, No. 1:09-cv-842-TWP-MJD, 2011 WL 4387470, at *6 (S.D. Ind. Sept. 20, 2011); *see also Medical Society of New Jersey v. Jacobs*, No. 93-3670 (WGB), 1993 WL 413016, at *8 (D. N.J. Oct. 5, 1993); *In Re Petition of Frickey*, 515 N.W.2d 741 (Minn. 1994); *Doe v. Judicial Nominating Commission*, 906 F. Supp. 1534, 1542-43 (S.D. Fla. 1995); *In re Petition & Questionnaire for Admission to Rhode Island Bar*, 683 A.2d 1333, 1337 (R.I. 1996); *Brewer v. Wisconsin Bd. of Bar Examiners*, No. 04-C-0694, 2006 WL 3469598, at *8 (E.D. Wis. Nov. 28, 2006*)*, aff'd,* 270 F. App'x 418 (7th Cir. 2008); *but see Applicants v. Texas State Bd. of Law Examiners*, No. A 93 CA 740 SS, 1994 WL 923404, at *9 (W.D. Tex. Oct. 11, 1994); *McCready v. Illinois Bd. of Admissions to Bar*, No. 94 C 3582, 1995 WL 29609, at *1 (N.D. Ill. Jan. 24, 1995); *In re Henry*, 841 N.W.2d 471, 476 n.5 (S.D. 2013); *see generally* LANNY KING, Note, *The Kentucky Board of Bar Examiners' Character and Fitness Certification Questionnaire: Are Mental Health Inquiries a Violation of the Americans with Disabilities Act?*, 84 KY. L.J. 685 (1996).

do "*not* provide an accurate basis for predicting future misconduct."[14]  Instead, they likely "deter applicants from seeking counseling and treatment for mental health concerns, which fails to serve the Court's interest in ensuring the fitness of licensed attorneys."[15]  In other words, according to the Department of Justice, a Bar Bureaucracy's decision to ask applicants about their mental health status makes aspiring lawyers *less* fit to practice law.[16]

B.

Jane Doe was born and raised in Kentucky.[17]  She earned her Florida law license in 2006 and worked there in government and private practice.  After a 2014 diagnosis for Bipolar I Disorder, Doe entered a monitoring program run by the Florida Lawyers' Assistance Program.  She was, and remains, in good standing with the Florida bar.[18]

In December 2015, Doe applied for a Kentucky law license.  The application required her to disclose her history of depression and Bipolar I Disorder and that she had undergone treatment.  And so began her 994-day tale of bureaucratic woe.

---

[14] Letter from U.S. Department of Justice, Civil Rights Division, to Karen L. Richards, Executive Director, Vermont Human Rights Commission (Jan. 21, 2014) at 5 (emphasis added).

[15] Letter from U.S. Department of Justice, Civil Rights Division, to the Honorable Bernette J. Johnson, Chief Justice, Louisiana Supreme Court, Elizabeth S. Schell, Executive Director, Louisiana Supreme Court Committee on Bar Admissions, Charles B. Plattsmier, Chief Disciplinary Counsel, Louisiana Attorney Disciplinary Board (Feb. 5, 2014) at 23.

[16] To be clear, neither Doe nor the Department of Justice has argued that Bar Bureaucracies cannot ask about an applicant's relevant past *conduct*, regardless of whether mental disability had a role in that conduct.  Rather, they argue that Bar Bureaucracies cannot ask about an applicant's status as a person with a mental disability, and they cannot treat an applicant differently based on that status.  So, for example, it's fair game to ask, "Have you ever been fired?"  Or, "Have you ever robbed a bank?"  Applicants' mental health provides no escape from the questions, even if they had a mental disability when they were fired (or robbed the bank).

[17] The Court takes the facts from the Amended Complaint and draws all reasonable inferences in Doe's favor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies on the Supreme Court Rules, which are public record.  *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

[18] DN 14-1 ¶ 18.

Doe disclosed everything Kentucky's Bar Bureaucracy required her to disclose. That included two required releases giving the Bar Bureaucracy "complete access to her personal and private medical records, including treatment notes"[19] and a third for her monitoring records from Florida. In January 2016, Doe's doctor told the Bar Bureaucracy that Doe had "compli[ed] with medical advice, prescription instructions," and what the Florida bar required of her.[20] Doe's doctors have always said she should "continue practicing law without concerns for her or the public's safety."[21]

The Bar Bureaucracy pressed on. So Doe sent in yet another form. This fourth medical records release granted "access to inpatient records, outpatient records, and treatment notes."[22]

The next month, shortly before Doe took the February 2016 bar exam, the Character and Fitness Committee refused to approve her application. Instead, in March, the Bar Bureaucracy proposed, and Doe signed, a "consent agreement" for conditional admission.[23] It required 1) a Kentucky Contract (more on that later); 2) compliance with Florida's rules and Kentucky's rules and reporting requirements; and 3) "residency in Kentucky . . . unless" Doe was relocating for work and the Bar Bureaucracy approved.[24]

The consent agreement did not provide details about the Kentucky Contract. Yvette Hourigan, Director of the Kentucky Lawyer Assistance Program, said the contract would mirror the monitoring arrangement Doe had with the Florida Lawyers' Assistance Program, which was tailored to Doe's diagnosis.

Doe passed the bar exam. She paid the dues and swearing-in fee.

---

[19] *Id.* ¶ 27.
[20] *Id.* ¶ 34.
[21] *Id.* ¶ 21.
[22] *Id.* ¶ 36.
[23] *Id.* ¶¶ 40, 41.
[24] *Id.* ¶ 40.

C.

Although Hourigan had promised to send a proposed contract, she didn't. Instead, she arranged to meet with Doe the morning of the new lawyers' swearing-in ceremony at the State Capitol. That day, Hourigan "texted that she was running late and they would meet on the steps of the Capitol" minutes before the swearing-in.[25]

At this point, you might be thinking that a public place with many of Doe's peers isn't an ideal place to discuss private medical issues. (It isn't.)

You might also wonder if other bar applicants could overhear their discussion.[26] (They could.)

Instead of the personalized contract Hourigan had promised, she presented a boilerplate contract. It included a host of medically unnecessary requirements, including random drug and alcohol testing. When Doe told Hourigan she had never had drug or alcohol problems, Hourigan told her the provisions were standard. Hourigan, who is not a doctor[27] but plays one on the Capitol steps, also said Doe's medications required abstinence from alcohol. (They don't.)

Doe refused to sign the contract. She told Hourigan it violated the Americans with Disabilities Act, and "the ADA does not permit the disabled to be treated like criminals."[28] (It doesn't.)

D.

Later in 2016, after Doe provided yet another medical-records release, Doe's doctor advised Hourigan that Doe could drink alcohol on her medication.

---

[25] *Id.* ¶ 49.
[26] *Id.* ¶¶ 50, 54.
[27] SCR 3.910(2).
[28] DN 14-1 ¶ 52.

Hourigan partially relented. She removed the alcohol provisions from the Kentucky Contract. But other intrusive and unnecessary requirements remained. For example, Doe had to tell Hourigan if she was leaving town for longer than a week.

Unable to practice law, Doe taught civics, safety, and sewing to refugees. Meanwhile, the Bar Bureaucracy ordered her to appear for a formal hearing, at Doe's expense, to show cause for allegedly violating the consent agreement. The Bar Bureaucracy's lawyer, Elizabeth Feamster, demanded even more documents, as well as the contact information for Doe's employer.

Doe asked Feamster if they could "discuss the ADA issues and how the parties could resolve concerns on both sides," rather than having a hearing.[29] But Feamster demanded that Doe prove she wasn't practicing law. In December 2016, Doe received in-patient treatment for her disability.

Doe's formal hearing was on April 27, 2017. She again expressed her concerns about violations of the Americans with Disabilities Act. Feamster relied solely on Doe's disability in denying Doe a full law license. Soon after, the Character and Fitness Committee recommended that the Supreme Court of Kentucky permanently revoke Doe's conditional license. Recall that on the record before us, Doe had been licensed by Florida for the past eleven years — and had practiced there for the first nine of those years — and remained in good standing that whole time.[30]

E.

A year later, in 2018, Doe successfully completed Florida's monitoring program. Her doctor wrote yet another letter to the Bar Bureaucracy saying he still "had no concerns regarding her mental health and encouraged her to continue practicing law."[31]

---

[29] *Id.* ¶ 76.
[30] *Id.* ¶ 18.
[31] *Id.* ¶ 92.

In July 2018, the Bar Bureaucracy held another hearing. Again, they interrogated Doe about her disability. After the hearing, Feamster demanded still more information about Doe's medical treatment. And yet again, Doe told the Bar Bureaucracy that they were violating the Americans with Disabilities Act.

Finally, in August 2018, Doe was unconditionally admitted to practice law in Kentucky.

Her bar file still contains protected health information and show cause orders suggesting that "her disability and treatment [are] character and professional flaws."[32]

In 2019, Doe filed this suit against the Bar Bureaucracy for violating the Americans with Disabilities Act, the Rehabilitation Act, and the Equal Protection Clause.[33] She also sued under Kentucky law for defamation and intentional infliction of emotional distress.[34]

F.

The Bar Bureaucracy moves to dismiss for lack of subject-matter jurisdiction and for failure to state a claim.[35] In addition, some defendants object to Doe's use of a pseudonym.[36]

---

[32] *Id.* ¶ 98.
[33] Doe brings her ADA and Rehabilitation Act claims against the institutional defendants (Supreme Court of Kentucky; Office of Bar Admissions; Character and Fitness Committee; Board of Bar Examiners; Kentucky Bar Association; and Kentucky Lawyer Assistance Program entities). *See id.* ¶¶ 108-13. She brings her constitutional claim against "All Defendants." *See id.* ¶¶ 114-24. This constitutional claim concerns the defendants' "system." *See id.* ¶ 118 ("licensing and bar admission system"), ¶ 119 ("licensing and bar admission system"), ¶ 120 ("licensing and bar admission system"), ¶ 121 ("licensing and bar admission system"), ¶ 122 ("licensing and bar admission system"), ¶ 124 ("licensing and bar admission system"). Therefore, this count is best construed to raise claims against the institutional defendants, as well as Hourigan in her official capacity. As for Feamster, earlier in the Amended Complaint, Doe is explicit that Feamster is sued only in her individual capacity. *Compare id.* ¶ 10, *with id.* ¶ 13. It's true this claim also says, "Defendants' discriminatory actions against Plaintiff based on her status as an individual with a mental disability were intentional or committed with reckless or callous disregard for her rights." *Id.* ¶ 123. But that paragraph can best be construed to concern the defendants' conduct in their official capacities. That's because the "actions against Plaintiff based on her status" were, by the very terms of Doe's Amended Complaint, in accord with the "discriminatory licensing and bar admission system." *Id.* ¶ 124. With regard to Doe's federal claims, Feamster did not, in her individual capacity, do anything to injure Doe.
[34] Doe's state-law claims concern the conduct of Feamster and Hourigan in their individual capacities.
[35] DNs 16, 18, & 19; *see also* DNs 7, 8, & 10.
[36] DN 8 at #179; DN 10-1 at #250; DN 18 at #366; DN 19 at #383. Doe later moved for leave to proceed under a pseudonym. DN 33. Some of the defendants opposed Doe's motion. DNs 34 & 35.

9

As for the pseudonym, Kentucky law explicitly protects the confidentiality of those who receive help (or hindrance) from the Kentucky Lawyer Assistance Program.[37] Kentucky law also protects Doe's character and fitness results from public disclosure.[38] And Doe's prior conditional admission status is confidential.[39]

The Bar Bureaucracy knows who Doe is. Opposing her pseudonym does little for its credibility. But ultimately that motion is moot because Doe's suit will be dismissed.[40]

II.

A.

Article III of the Constitution limits the Court's jurisdiction to only "Cases" and "Controversies."[41] Doe asks for injunctive relief, damages, and attorneys' fees.[42] She must have standing for each claim "and for each form of relief that is sought."[43]

---

[37] SCR 3.990; *see also* KENTUCKY LAWYER ASSISTANCE PROGRAM, *KYLAP Staff*, https://www.kylap.org/about-kylap/kylap-staff/ ("All contact with KYLAP is confidential.").
[38] *See* SCR 2.008.
[39] SCR 2.042(4).
[40] Doe asks to amend her Complaint. DN 14. She voluntarily dismissed her claims against some defendants, none of whom have answered or moved for summary judgment. DN 14-1 at #267; Fed. R. Civ. P. 41(a)(1)(A)(i). Dismissing them without prejudice is appropriate. Fed. R. Civ. P. 41(a)(1)(B). The remaining defendants oppose the amendment on futility grounds and alternatively move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. DNs 16, 18, & 19.
[41] U.S. CONST. Art. III, § 2; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).
[42] DN 14-1 at #290.
[43] *Town of Chester, New York v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1650 (2017) (quoting *Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008)) (cleaned up).

1.

For injunctive relief, Doe wants the Bar Bureaucracy "to remove show cause orders and medical information and records from [her] file."[44] But Doe has not alleged any harm that may result from the allegedly tainted file, much less that an injury is "certainly impending."[45]

Although it took years to get there, Doe is now a full-fledged Kentucky lawyer.[46] And if she avoids any disciplinary issues here in Kentucky — just as she remained in good standing in Florida — the file may never come into play.[47] It's conceivable that her file could be used at some point for some other purpose. But any future injury is "speculative or tenuous," so Doe has "no standing to seek injunctive relief."[48]

2.

Doe also lacks standing for the federal claims she brings against the Office of Bar Admissions, the Kentucky Board of Bar Examiners, the Kentucky Bar Association, the Kentucky Lawyer Assistance Program entities, and Yvette Hourigan in her official capacity. There is no "causal connection" between Doe's injuries and these defendants.[49] They didn't block her from practicing law, if only because they didn't have that power.

Dissecting this byzantine Bar Bureaucracy takes a little digging. It turns out that none of those entities have any authority in the character and fitness process. Instead, the Character and Fitness Committee makes its own rules, which the Supreme Court of Kentucky approves.[50]

---

[44] DN 14-1 at #290. Specifically, as of December 2018, Doe's "official bar files contained confidential and protected health information and multiple orders to show cause which reference her disability and treatment as character and professional flaws." DN 14-1 ¶ 98.
[45] *Clapper v. Amnesty International USA*, 568 U.S. 398, 401 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).
[46] DN 14-1 ¶ 97.
[47] *Id.* ¶ 18.
[48] *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001).
[49] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[50] SCR 2.000.

Likewise, the Character and Fitness Committee decides who has the "character and fitness" to practice law, and only the Supreme Court of Kentucky can review that decision.[51] The same is true for deciding who is conditionally admitted: Only the Character and Fitness Committee makes that call,[52] and only the Supreme Court can overrule it.[53] Thus, although the Character and Fitness Committee is a division of the Office of Bar Admissions, the Office of Bar Admissions doesn't actually make any final decisions — at least not for our purposes.

3.

Doe does, however, have standing for her federal-law damages claims against the Supreme Court of Kentucky and the Character and Fitness Committee. They had the power to (and did) decide to ask her about her mental health.[54] They had the power to (and did) put her through the ringer based on her honest answers.[55] They had the power to (and did) deny her an unconditional license for over two years.[56] They had the power to (and did) impose administrative and financial burdens on her that they didn't impose on other applicants.[57]

All these injuries are "fairly traceable" to the Kentucky Supreme Court and the Character and Fitness Committee.[58] And a damages decision in Doe's favor would redress these injuries.[59]

---

[51] SCR 2.011; SCR 2.060.
[52] SCR 2.042.
[53] SCR 2.060.
[54] *See* DN 14-1 ¶ 26. While Doe refers here to the "KBA," the Kentucky Bar Association does not determine an applicant's character and fitness to practice. *Compare* SCR 3.025 *with* SCR 2.060.
[55] *See, e.g.*, DN 14-1 ¶ 36 (requiring "inpatient records, outpatient records, and treatment notes").
[56] *See id.* ¶ 97.
[57] *Cf. id.* ¶ 78.
[58] *Lujan*, 504 U.S. at 560 (cleaned up).
[59] *Id.* at 561.

Doe also has standing to sue both Hourigan and Feamster personally for defamation and intentional infliction of emotional distress. The remaining claims and defendants are:

- The Supreme Court of Kentucky (federal-law claims);
- The Character and Fitness Committee (federal-law claims); and
- Hourigan and Feamster (state-law claims).

B.

The second jurisdictional question concerns the *Rooker-Feldman* doctrine. Some of the defendants rely on it in asking for dismissal.[60] But *Feldman* explicitly says the Court has "subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state court judgment in a particular case."[61] Here, Doe challenges Kentucky's bar rules, including its "licensing and bar admission system."[62] The *Rooker-Feldman* argument fails.[63]

C.

The third jurisdictional question is straight out of a Fed Courts exam. Is state sovereign immunity the type of jurisdictional issue the Court must decide before it considers non-jurisdictional issues (like judicial and legislative immunity)?

Let's start with the argument for "yes." The Sixth Circuit has said, repeatedly and as recently as last week, that state sovereign immunity is "jurisdictional."[64] Also, the Eleventh

---

[60] DN 18 at #352-55; DN 19 at #383.
[61] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).
[62] DN 14-1 ¶¶ 118-22, & 124.
[63] *See VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 409 (6th Cir. 2020) (Sutton, J., concurring) ("Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop.").
[64] *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015); *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018); *Ladd v. Marchbanks*, --- F.3d ---, 2020 WL 4882885, at *1 n.2 (6th Cir. Aug. 20, 2020).

Amendment talks about the "Judicial power of the United States" and where it "shall not be construed to extend," which sure sounds jurisdictional.[65]

But here's why, in this case, the answer is "no." Unlike subject-matter jurisdiction, which can never be waived, a state can waive its sovereign immunity.[66] In the same vein, while the party invoking jurisdiction has the burden of establishing jurisdiction, a defendant invoking sovereign immunity has the burden to show it applies.[67] That's because the Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction."[68] It "does not automatically destroy original jurisdiction."[69]

Under *Nair v. Oakland County Community Mental Health Authority*, "a State that has authority to waive the broader question (of whether it is amenable to suit at all) has authority to waive the narrower question (of whether a court must address a sovereign-immunity defense before the merits)."[70] And that's what happened here: Although the defendants raised sovereign immunity in their motions to dismiss, at oral argument, they expressly declined to raise it as a threshold defense, and they specifically cited *Nair* in doing so.[71] Thus, under *Nair*, the Court may address judicial and legislative immunity before state sovereign immunity.[72]

---

[65] U.S. CONST. Amend. XI.
[66] *Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 389 (1998).
[67] *Nair v. Oakland County Community Mental Health Authority*, 443 F.3d 469, 474 (6th Cir. 2006).
[68] *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *see also Nair*, 443 F.3d at 474 (The Eleventh Amendment "defense is not coextensive with the limitations on judicial power in Article III.") (quoting *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998)) (cleaned up).
[69] *Schacht*, 524 U.S. at 389.
[70] 443 F.3d at 476 (citing *Alden v. Maine*, 527 U.S. 706, 737 (1999)).
[71] Oral Argument, Aug. 26, 2020 (Q: "[You are] declining to raise sovereign immunity as a threshold defense?" KBA: "Correct. We are not waiving sovereign immunity, but we are declining to raise it as a set — threshold defense as set forth in *Nair*."; Board Defendants: "Yes, sir. Same."; Supreme Court: "Correct . . . to reserve it in the event that the sovereign would otherwise lose on the merits.").
[72] *See, e.g.*, *Nair*, 443 F.3d at 477; *West v. Berkman*, No. 19-2384, 2020 U.S. App. LEXIS 25450, at *6-8 (6th Cir. Aug. 11, 2020); *Kitchen v. Noe*, Nos. 18-2254/19-1125, 2019 U.S. App. LEXIS 24499 at *4 (6th Cir. Aug. 15, 2019); *cf. Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 779 (2000) ("We . . . have routinely addressed *before* the question whether the Eleventh Amendment

This conclusion doesn't contravene the precedents of this circuit that at most imply otherwise. Even *Russell v. Lundergan-Grimes*, which held that Eleventh Amendment immunity is "jurisdictional," said that courts are "not required" to raise Eleventh Amendment immunity if the defendant doesn't.[73] In contrast, the Court must always consider issues of subject-matter jurisdiction, even if the parties don't raise them.[74]

In this case, the sovereign immunity question is complex. Congress has abrogated sovereign immunity when a state violates the Americans with Disabilities Act and also the Fourteenth Amendment.[75] Courts have split on whether systems similar to Kentucky's violate the Americans with Disabilities Act. The issue "has been the subject of intense controversy."[76] And if the Bar Bureaucracy violated only the Americans with Disabilities Act and not the Fourteenth Amendment, then the Court would decide "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."[77]

Those issues can and should be avoided by first answering the question of judicial and legislative immunity — a question on which there is binding precedent directly on point.

### D.

In *Sparks v. Character & Fitness Committee of Kentucky*, the Bar Bureaucracy refused to admit Gerald Sparks to the bar.[78] He sued for damages.[79] The Sixth Circuit held that "the nature

---

forbids a particular statutory cause of action to be asserted against States, the question whether the statute itself *permits* the cause of action it creates to be asserted against States.").

[73] *Russell*, 784 F.3d at 1046.
[74] *Fort Bend County, Texas v. Davis*, 139 S.Ct. 1843, 1849 (2019).
[75] *United States v. Georgia*, 546 U.S. 151, 159 (2006) ("Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.").
[76] *Brewer v. Wisconsin Board of Bar Examiners*, No. 04-C-0694, 2006 WL 3469598, at *8 (E.D. Wi. 2006), *aff'd*, 270 F.App'x 418 (7th Cir. 2008).
[77] *Georgia*, 546 U.S. at 159.
[78] 859 F.2d 428 (6th Cir. 1988).
[79] *See id.* at 429.

15

of the function involved in determining qualifications for admission to the bar" is "a judicial act."[80] Therefore, "absolute immunity" shielded both the Supreme Court of Kentucky and the Character and Fitness Committee.[81]

The Sixth Circuit reached the same result in *Mayfield v. Francks*.[82] And again in *Thomas v. Michigan State Board of Law Examiners*.[83] And once again in *Lawrence v. Welch*.[84] In each instance, judicial immunity protected a Bar Bureaucracy when plaintiffs sought damages for how it adjudicated their bar applications.[85]

Another immunity, legislative immunity, protects the Supreme Court of Kentucky from a challenge to its promulgation of bar admission rules, including the rules requiring the Character and Fitness Committee to interrogate applicants about their mental health. In *Supreme Court of Virginia v. Consumers Union of the United States*, the U.S. Supreme Court held that the Bar Bureaucracy's "members are the State's legislators for the purpose of issuing the Bar Code," so they "are immune from suit when acting in their legislative capacity."[86] Likewise, the Sixth Circuit has applied legislative immunity to block suits challenging how a state supreme court and its delegates promulgated rules about who gets to become a lawyer.[87]

By this point, you might be wondering how a plaintiff could ever challenge the way a Bar Bureaucracy asks applicants about their mental health and puts them through the ringer if they

---

[80] *Id.* at 433.
[81] *Id.* at 434.
[82] 959 F.2d 235 (6th Cir. 1992) (unpublished table decision).
[83] 41 F.3d 1508 (6th Cir. 1994) (unpublished table decision).
[84] 531 F.3d 364 (6th Cir. 2008).
[85] *See Lawrence*, 531 F.3d at 372-73 (affirming district court's dismissal of claim seeking damages for failure to state a claim); *Thomas*, 1994 WL 659148, at *2 ("The individual state defendants are absolutely immune from a civil rights action for damages."); *Mayfield*, 1992 WL 73151, at *1 ("The dismissal of Mayfield's monetary claims was also appropriate. Monetary relief is unavailable to Mayfield because the defendants were protected by absolute immunity for the actions that they performed at the behest of the Michigan Supreme Court.").
[86] 446 U.S. 719, 734 (1980).
[87] *See, e.g.*, *Abick v. Michigan*, 803 F.2d 874, 878 (6th Cir. 1986).

truthfully disclose a mental disability. The answer is that a plaintiff could sue for prospective relief — a declaration that the questions violate federal law and an injunction prohibiting the Bar Bureaucracy from asking them. To have standing, the plaintiff would need to be a bar applicant, not an unconditionally licensed lawyer like Doe was when she filed this suit.

E.

Let's recap. For her federal-law claims, Doe lacks standing for prospective relief. She also lacks standing to sue the institutional defendants other than the Supreme Court of Kentucky and the Character and Fitness Committee because the others didn't cause her injuries. Judicial immunity and legislative immunity shield the Supreme Court of Kentucky and Character and Fitness Committee from damages.

Doe's federal claims must therefore be dismissed.[88] And the Court declines to exercise jurisdiction over her state-law claims.[89]

\*    \*    \*

Law school is hard. The stress, rigor, and competition can lead to depression, anxiety, and substance abuse. Many students who start school healthy are far from it by the time they graduate. Some kill themselves.[90]

---

[88] Without injunctive relief or damages for Doe's federal-law claims, all that's left of her prayer for relief against the Supreme Court of Kentucky and the Character and Fitness Committee are her attorneys' fees and costs. *See* DN 14-1 at #290. "The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself. An interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990)) (cleaned up).
[89] 28 U.S.C. § 1367(c)(3).
[90] *See The Suicide of a Law Student Hits Home*, LAWYERS WITH DEPRESSION http://www.lawyerswithdepression.com/articles/the-suicide-of-a-law-student-hits-home/.

17

Aspiring lawyers should seek the health care they need.  But if Kentucky continues to punish people who get help, many won't.[91]  And one day, a law student will die after choosing self-help over medical care because he worried a Character and Fitness Committee would use that medical treatment against him — as Kentucky's did against Jane Doe.

It is not a matter of if, but when.

*Justin R. Walker*

Justin R Walker, District Judge
United States District Court

8/28/2020

---

[91] *See, e.g.*, MADELINE HOLCOMBE, *Law Students Say They Don't Get Mental Health Treatment for Fear It Will Keep Them from Becoming Lawyers*, CNN.COM (Feb. 29, 2020), https://www.cnn.com/2020/02/23/health/law-school-bar-exam-mental-health-questions/index.html.